SAPELA et al., Plaintiffs

v.

MAGEO VEEVALU and GEO. A. ARMSTRONG, Defendants

No. 8-1905

High Court of American Samoa

Civil Jurisdiction, Trial Division

[Land: "Autapini" in Pago Pago]

December 5, 1905

Before: HON. C. B. T. MOORE, *President of High Court,*
and HON. E. W. GURR, *Member*

DECISION and OPINION

The land in dispute is a portion of the locality known as
Autapini in Pago Pago which has been commonly known as

the "Mageo" property. The plaintiff claims that a former Mageo left by will (nuncupative) the estate to her mother through whom she claims for herself and other members of her family. In February of 1902 Mageo Veevalu transferred the property now in dispute to Faanati, a Samoan, wife of George Armstrong, to be held for the use of the said Faanati and her issue. Faanati died a few weeks ago and since the original institution of these proceedings, and her son, Edward James Armstrong, an infant, is the present claimant, represented by his father and guardian, George Armstrong. As Mageo was the donor, upon the application of the defendant, Armstrong, he was joined as a defendant. After the commencement of the suit Mauga filed a bill asking to be joined as a third party. Subsequently Mauga asked leave of the Court to withdraw his bill, which was granted.

Upon the gift to Faanati her husband, on behalf of his wife, erected a cottage on the land and generally improved it. He has expended, all together, about $1,400.00 in improvements.

On the twenty-first day of August in the year 1903, after the house was built, a complaint was filed in this Court by Pulu, Sapela, Fanene, Vaumaolo, and Tuinei against Mageo to try the title of the land in Autapeni called "Fausaga".

A meeting was held between the contestants and notice was given of the withdrawal of the complaint.

On the first day of April 1904, Sapela, one of the complainants above named, gave notice to the Registrar of Titles, that she claimed the land transferred by Mageo to Faanati and her issue, and the present suit has been commenced in order to try her title.

It was ascertained that at the meeting held before the first complaint was withdrawn the complainants agreed to recognize the title of Mageo and Sapela, and a portion of

the property was set apart for the use of Sapela, who first agreed but afterwards, finding that the area was much smaller than she expected, refused to acknowledge Mageo as the owner of the balance, and several months afterwards she gave the notice before mentioned to the Registrar of Titles.

The plaintiff's mother, Emma, with her husband, lived on the land prior to 1870, and upon her death and that of her husband some years later, both were buried on a portion of Autapeni, but not on the section now in dispute. After the death of Emma the plaintiff, who is married to a native missionary, lived at several places in Samoa where her husband was appointed. Then Mageo took possession and has occupied the land continuously up to the present time.

Mageo also claims, that notwithstanding his title by succession to the Mageo, his holding is indefeasible owing to his long possession, considerably over the prescriptive period of ten years, and that Sapela, no matter what her rights may have been, is estopped from putting forth any claim to the land at the present time.

It is admitted that Emma was the adopted daughter of Mageo Ifi. It is also proved that the same Mageo divided among members of his family his estate, but there is a great divergence of testimony as to the manner of the disposition.

The plaintiff avers that Mageo Ifi bequeathed land "Fausaga" to her, and that the property in dispute is part of the same "Fausaga". Testimony controverting this tended to show that Fausaga proper is situated seaward of the main road of Pago Pago and opposite the land in dispute, but the defendants claim that this was not given by Mageo Ifi to the claimant's mother. There was a disinclination on the part of the defendants to admit that Ifi was a Mageo and also that Emma was adopted by him as his daughter. But

it was apparent that Mageo Ifi had considered Emma in the disposition of his property, and the defendant afterwards had conceded that she was entitled to land called Fausaga, but had given it a different location.

■ This admission on the part of the defendant Mageo, takes the case out of the period of limitation, and the Court will follow the principle laid down in *Lord v. Shaler* (8 Am. Dec. 162). "An acknowledgment that a debt barred by the statute of limitations is still due will take the case out of the statute," and in *Ingersoll v. Lewis* (51 Am. Dec. 536), and in *Davis v. Collins* (43 Fed. 31), "Interruption of the continuity necessary to acquire title by prescription occurs when the adverse claimant recognizes the title of the disseizee. On recognition of such title his adverse possession ceases to be adverse, no matter how hostile it may previously have been, and limitation does not again begin to run against the person whose title is acknowledged until the claimant repudiates his title." It is also held in New York that recognition is a confession of a title in another when sued in ejectment instead of pleading and going to trial. (*Keneda v. Gardner*, 4 Hill N.Y. 469.)

The case at bar appears to be analogous to the New York case cited.

■ There are instances amongst the Samoan people that will not admit of a rigid application of the rules which govern title by adverse possession. To do so would be inequitable in many cases, especially those where the dispute occurs amongst persons of close relationship or being adopted into a family obtain an interest in the community lands and recognize the "matai" or paternal head of the family in all matters governing the relations of the several members—in such cases a privity is established between the members of the community and no person would attempt to exercise a right adverse to the wishes of the "matai"

128

previous to the establishment of the present government. If there is a privity between an occupant claiming adversely to the true title, this will be fatal to the claim of the party setting up title by adverse possession. "The situation of the parties determines what is possession." (*Simmons Creek Coal Co. v. Doran*, 192 U.S. 443.) To constitute adverse possession it must be "actual, visible, exclusive, hostile and continued during the time necessary to create a bar under a statute of limitations." (1 Cyc. 981.)

■ Of these elements, there is some doubt as to whether the possession of Mageo has been sufficiently exclusive and hostile to establish a title by adverse possession.

"Exclusive possession means a possession exclusive of all persons whatsoever." (1 Cyc. 1026: *Burke v. Adams*, 50 Am. Rep. 510.)

Evidence was produced to show that one of the claimants under the plaintiff Sapela, has been living on a portion of the land claimed by her under the bequest of Mageo Ifi, so that by applying the doctrine embraced in the foregoing citations it must appear that adverse possession of the defendant Mageo cannot be exclusive. But, in addition to being exclusive, the possession must be hostile. "The mere fact that the claimant has had possession of the land for the statutory period will not suffice to satisfy the rule requiring the disseizor's possession to be hostile." (1 Cyc. 1027, *Little v. Libby*, 11 Am. Dec. 68.)

■ The statute of limitations does not begin to run until the true owner has actual notice of a hostile holding against him, or until there are acts or declarations on the part of the claimant showing the possession to have become hostile, done or made in such manner and under such circumstances as to leave no doubt that they came to the knowledge of the owner or some one representing him. It must be shown that the true owner had knowledge of the

adverse holding, or it must be so open and notorious as to raise a presumption of notice to him equivalent to actual notice. (1 Cyc. 1032.)

■ From a Samoan standpoint it may asserted that the occupation of Mageo was by virtue of a custom existing that whenever land is unoccupied or the real owner is unable to use it through absence, a relative of the real owner would be entitled to occupy the property and by so doing there could be no inference that he was occupying the land adversely to the true owner. As to whether Mageo entered upon the land in the inception with the deliberate intention to disseize the plaintiff, the evidence is ambiguous and uncertain. The facts, however, that the parents of the plaintiff were buried on the land, one of whom was interred since Mageo entered into possession, the occupation of a portion by one of the relatives of the plaintiff and the recognition of an interest in Sapela by Mageo in late years make the claim of the defendant to adverse possession appear nebulous.

It behooves the court to conclude that the plaintiff Sapela and those claiming with her have an interest in the land in dispute and that Mageo disregarded that interest when transferring the land to the defendant. The Court, however, is not prepared to define the extent of that interest in the present case. It seems that if the parties cannot agree amongst themselves it will be necessary for further action to be taken and the Court to receive more evidence as to the interest involved in the greater estate claimed by Sapela, and then make the necessary disposition of the property.

But the Court will now dispose of the estate claimed by the defendant, George Armstrong, who entered upon the property in good faith and erected valuable improvements upon it without any notice of the claim of Sapela, who was aware of the erection of the dwelling house on the land.

Many months passed, after the entry by Armstrong, before she asserted her right.

■ In *Searl v. School District, Lake County,* reported in 133 U.S. page 561, Chief Justice Fuller states "the civil law recognized the principle of reimbursing to the bona fide possessor the expense of his improvements if he was removed from his possession by the legal owner, by allowing him the increase in the value of the land created thereby. And the betterment laws of the several states proceed upon that equitable view. The right of recovery, where the occupant in good faith believes himself to be the owner, is declared to stand upon a principle of natural justice and equity, and such laws are held not to be unconstitutional as impairing vested rights, since they adjust the equities of the parties as nearly as possible according to natural justice; and in its application as a shield of protection, the term "vested rights" is not used in any narrow sense, but as implying a vested interest of which the individual cannot be deprived arbitrarily without injustice. The general welfare and public policy must be regarded, and the equal and impartial protection of the interests of all.

And in *Pomeroy's Equity Jurisprudence,* par. 1241, it says "The right to a contribution or reimbursement from the owner, and the equitable lien on the property benefited as a security therefor, have been extended to other cases where a party innocently and in good faith, though under a mistake as to the true condition of the title, makes improvements or repairs or other expenditures which permanently increase the value of the property, so that the real owner, *when he seeks the aid of equity* to establish his right to the property itself, or to enforce some equitable claim upon it, having been substantially benefited, is required, upon principles of justice and equity, to repay the amount expended."

131

If the Court should follow the principles just quoted it would be incumbent on the right owner to pay Armstrong a sum of money which may be considered large for Samoans to raise, and that he would have an equitable mortgage over the property until the whole sum should be satisfied with interest.

The regulations of the Naval Station prohibit the sale of native lands to a foreigner, and a fortiori there can be no mortgage equitable or legal, but under section 8, of the *Native Lands Regulation*, 1900, "a native proprietor of land who desires to make provision for a son or daughter in view of legal marriage with a non-native or for his son or daughter already legally married to a non-native or to any issue of any such marriage by grant or transfer of the land by instrument inter vivos or by will or deed mortis causa in favor of any trustee to hold in trust for the use of such son or daughter or such issue."

The intention of Mageo, as donor, was to vest the property in Faanati and her heirs, and the Court is of opinion that equity will be done to all by following the rule stated in section 10, article 4, of the Berlin Treaty concerning Samoa, which was adhered to in settling the land titles before the Samoan Land Commission and the Supreme Court of Samoa, enabling persons who had acquired land in good faith and had improved it but afterwards found the title to be defective, the title may be confirmed upon the payment by the occupant to the person or persons entitled thereto of a sum of money deemed to be equitable and just.

It is considered by the Court, in order to enable Mageo to vest the property claimed in the defendant under the regulation of the United States Naval Station, and for the defendant to perfect his title, that the defendant pay a sum of $150.00, and upon which payment a decree of this court will be issued enabling Mageo to transfer to George Armstrong in trust for his son the property in dispute.

132

The sum of money shall be paid into Court to await a settlement of the differences between the plaintiff Sapela and the defendant Mageo. Failing which, Sapela is instructed to bring further suit in Court to try the title to the balance of the land claimed by her.

Costs of Court to be paid by the defendant.

---

EDITOR'S NOTE: The Defendant in this case paid the $150.00 required by the Court to perfect his title, thus the ensuing decree:

### DECREE

This cause having been regularly called and tried by the Court, and the findings of fact and conclusions of law, and the decision thereon in writing having been duly rendered by the Court, which are now on file in this cause, wherein it was ordered that Defendant Geo. A. Armstrong pay the sum of One Hundred and Fifty Dollars ($150) into Court in order to perfect his title to the portion of land in dispute, claimed by him, in trust, which said sum is subject to an award of the Court to one or all of the adverse Samoan Claimants to said land should said Claimants fail to amicably adjust their differences, and that upon payment of said sum a decree of the Court would issue enabling Mageo, a defendant herein, to transfer to George Armstrong in trust for his son the property in dispute; and Whereas since the rendition of said judgment the said George Armstrong has paid said sum of $150 into Court as directed.

It is now, therefore, hereby ordered, adjudged and decreed that the said Mageo, one of the defendants herein, is, for the purposes intended by this decree, seized in fee, and is the true and lawful owner of ALL that piece or parcel of land situate in Pago-Pago and being known as part of "Autapini" and being described as follows: Starting at the Northwestern juncture of the road to Pago-Pago with the

"Autapini" creek, thence bearing North 65°06′ East, distance 70 feet; thence bearing North 45°54′ West, distance 115 feet; thence bearing North 45°54′ West, distance 146.5 feet; thence bearing South 64°56′ West, distance 27.3 feet; thence bearing South 25°04′ East, distance 250 feet to the point of starting.

And it is further ordered, adjudged and decreed that all adverse claims of the plaintiffs to said described land, and each of them, and all persons claiming or to claim said premises or any part thereof, through or under said plaintiffs, or either of them, are hereby adjudged and decreed to be invalid and groundless; that the title of the said Mageo thereto is adjudged to be quieted against all claims, demands, or pretensions of the plaintiffs or either of them, who are hereby perpetually estopped from setting up any claims thereto, or any part thereof.

And it is further ordered, adjudged and declared that the defendant Mageo and defendant George Armstrong, as guardian, pay Costs of Court to be assessed.