## DAVEIS *v.* COLLINS *et al.*

(*Circuit Court, N. D. Illinois.* June 24, 1890.)

1. ADVERSE POSSESSION—ADMISSION AGAINST TITLE—HUSBAND AND WIFE.
   Though the husband be a drunkard, and the wife support the family by her in-
   dustry, he still continues the head of the family, and any admission by him as to
   whether his occupation of land is adverse concludes her right after his death.
2. SAME—ACKNOWLEDGMENT OF ANOTHER'S TITLE.
   An acknowledgment by a mere squatter of ownership in another person inter-
   rupts the running of adverse possession.
3. SAME—MENTAL CAPACITY TO MAKE ACKNOWLEDGMENT.
   The mental capacity of the person in possession to execute a lease, thereby ac-
   knowledging another's ownership, cannot be inquired into as against an innocent
   purchaser.
4. SAME—SALE FOR TAXES.
   The running of prescription in favor of one holding by adverse possession is in-
   terrupted by a sale for taxes.

At Law. Ejectment.

*Charles H. Aldrich,* for plaintiff.

*Louis Shissler, James H. Ward, A. T. Powers,* and *Robert B. Kendall,* for defendants.

BLODGETT, J., (*orally charging jury.*) This is an action of ejectment to recover possession of block 111 in the original subdivision known as "Canalport," an addition to the city of Chicago. The plaintiff has of-fered proof showing that this Canalport subdivision was made upon a portion of section 30, in township 39, range 14 E., lying in Cook county; that this portion of section 30 was patented by the United States to one Welch; that Welch conveyed it to Hamilton and Pearsons; that Pear-sons conveyed his interest in it to Hamilton; that Hamilton, in 1853, conveyed to Samuel J. Walker; that Samuel J. Walker conveyed block 111 to one H. H. Walker; that H. H. Walker made a conveyance by mortgage to one Prather; that Prather obtained title by foreclosure of his mortgage, and conveyed to Matthews, and Matthews to Cooper, Cooper to Pierce, Pierce to Bridge, and Bridge to the plaintiff,—thereby showing an undisputed chain of title from the United States to the plain-tiff in this case, which entitles the plaintiff to recover unless the defend-ant has made out a defense. The defendant does not claim to have ever had any paper title to this property; the only title which the de-. fendant sets up is a title by possession. It is an undisputed fact in this case—that is, the testimony on the part of the defendant tends to es-tablish it, and there is no testimony contradicting it—that the defend-ant's husband in May, 1861, entered upon these premises, and built a house or shanty; that the defendant's husband continued to reside on the premises with his family until he died, in September, 1882.

It is urged, and much talk is had here about the defendant Mrs. Collins having rights here aside from her husband. I say to you, as a matter of law, that by mere possession, as long as her husband was living and the head of the family, she could gain nothing by her posses-

sion. Her possession was simply subordinate to her husband's possession. He had the right, if he entered there without right, to admit that he had no rights there, and that admission would be binding upon her. If the party owning the land found Collins in possession of the property, he was not obliged to go to his wife and ask her by what right he or she was there; but if he made negotiations with Collins to take a lease, or Collins admitted he had no rights there, such action was binding upon Mrs. Collins. Now, the testimony shows without doubt—there is no question made upon it—that Mrs. Collins was probably an industrious and hard-working wife and mother. She had a large family of children, and worked hard to support those children, and may even have done more than the husband towards supporting them; but the husband was the head of the family in the eye of the law, and whatever he did in reference to this property was binding upon her and the family, no matter if he was a drunkard, unless his drunkenness was produced or occasioned by the act of the parties now claiming as against her.

The law provides, in substance, that unchallenged, uninterrupted possession of lands, under an assertion or claim of title, or an interest in them for the term of 20 years, protects that title; but it must be continuous, complete, and unbroken for the entire 20 years. Now, there is no doubt but what the Collins family went in there, as I said, in 1861, and that they have remained upon the premises ever since that time. If they entered upon those premises as mere squatters, without asserting any title whatever, just merely by the sufferance of the owner, they could only acquire, in the extremest point of view, a title as against that owner, by asserting that they entered there by some right of their own, and continuing that possession and that assertion of right until the expiration of 20 years. Now, is that state of facts established in behalf of this defendant, admitting that she succeeds to the rights which began to inure under her husband? The testimony on the part of the plaintiff tends to show that, in the early part of the year 1871, Mr. Henry Jones was on these premises in company with Mr. Samuel J. Walker, who was then the owner of the patent or paper title; that Mr. Walker and Mr. Jones went to the house where the Collins' family resided; that they saw Collins there. Mr. Walker asked Collins what right he claimed there, or why he was there. Collins said, in substance, that he was a mere squatter; he did not claim any right. Walker then said to him: "You can stay here until I want it, or until I give you notice to leave." This is the substance of Jones' testimony as to what took place, as I remember it, and it tends to show what did take place in 1871.

The testimony further shows, without doubt,—because there is no testimony contradicting it, and the testimony is all one way on the subject,—that in May, 1877, after Walker had sold, and after the paper title had become vested in Cooper,—Cooper being represented here by the firm of Rees, Pierce & Co.,—Pierce, one of the members of the firm, went upon the premises, and found Collins and his family in possession; that he, Collins, claimed possession to a much larger tract than this block, but he finally agreed to give up the surrounding blocks if he could have a lease

for a certain term of block 111, now in controversy; and that such negotiations were had that it was agreed that he should take a lease, and that on the day this lease bears date he was at the office of Rees, Pierce & Co. with Judge Wood, (then a lawyer of this city, of high standing as an able and conscientious man,) as his attorney, and who died only a few months since, and there the lease which is now offered in evidence was executed. The testimony further tends to show that after this deed was made the witness Col. Pierce was on the premises, and saw Collins yet in possession. That afterwards the title passed from Cooper to Pierce, and from Pierce to Bridge, and then Bridge went upon the premises, and found the Collins family in possession; that he saw Collins, and he still admitted that he was there under the lease, and not under any other title; and that he was willing to stay on, even after the expiration of the lease, on the terms of the original lease, and that he was permitted to do so.

Now, if a person entering upon possession of premises without title, and as a mere squatter, acknowledges the ownership of any other person in the property, that breaks the effect of the statute at once. The moment that the person in possession of the premises acknowledges that he is not the owner, the running of the statute, in common language, is broken, and the 20 years, or whatever time has run, counts for nothing. So if the testimony is credible to your satisfaction that Collins, in 1871, acknowledged to Walker in the presence of Jones, that he was a mere squatter, then he gained nothing by the possession which had continued from the time he entered in 1861.

Then, again, if he took a written lease in 1877 from the then owner, Cooper, he has estopped himself, in the language of the law; that is, he has prevented himself from setting up any title as against Cooper, or any person claiming under Cooper. He has admitted Cooper's title. He cannot dispute his landlord's title. If either of you, being the owner of land, makes a lease of it, your tenant cannot deny your title. He has acknowledged the supremacy of your title to the premises, and he cannot set up any title in his own favor, and he cannot even acquire an outstanding title as against you while he holds a lease under you.

So, if you believe that this man, Collins, executed this lease at the time that is stated, that is the end of all claim to any title on the part of the present defendant here, the widow of this man Collins. She can take nothing except what she takes from the acts of her husband, and if the statute would not protect him if living, it would not protect her, he being dead. The mere fact that this woman was in a certain and common sense the leader of the family, the person upon whom they depended for their support, was the energetic and industrious and faithful and intelligent head of the family in a certain sense, does not count for anything in her favor; that is to her credit as a wife and as a mother, but not in obtaining title to this property.

Then, again, if, being in possession of this property, having acknowledged no other ownership to it, she allowed it to be sold for taxes before her 20 years' title had accrued, that breaks the running of her right of

possession under it, and it has got to start and run again for another 20 years before she can get another title as against the tax-title. Now, the testimony is undisputed here that in 1873 the land in question was sold for taxes, and a deed was made to the city of Chicago, which title has since passed to the present plaintiff. Further, that later on, and in the year 1874, the same premises were sold for a South Park assessment, and bid in by the South Park commissioners, and a deed made to the South Park commissioners by the county clerk, and the present plaintiff is clothed with whatever title passed by these tax-deeds, as the proof shows. These facts break the continuity of the running of the defendant's title, because no 20 years had elapsed from the time the defendant entered until the title accrued under the tax-title.

Then, the only question I can conceive of in this case, as a question of fact that is to be passed upon by you, is, was this man competent to make a contract at the time he made the lease in 1877? As against the present plaintiff, who was a stranger to him, the mental condition of this man Collins at that time cuts no figure. He had executed a paper which, upon its face, purported to be a complete acknowledgment of Cooper's superiority of title. He had made himself Cooper's tenant, and if there was any reason existing in his want of mental capacity for setting aside that lease, asserting that it was obtained when he was drunk, or not competent to make a lease, that should have been done in a court of equity in apt time after they became aware that there was such a paper. Now, the proof shows that this man Collins lived until December, 1882,—over five years after the lease was executed; and the proof also tends to show that he admitted himself in possession under the lease some two years after he had taken it. He died in December, 1882, as the proof shows; yet he takes no steps to attack this lease which he had made, and the wife has taken no steps to attack it since. They could have gone into a court of equity, if they had any foundation for doing it, but they cannot set up the defense that Collins was incompetent to make a lease in a court of law. So, gentlemen of the jury, upon the admitted facts in this case, I charge you that the plaintiff is entitled to recover; and you may render a verdict for the plaintiff without leaving your seats.