[No. 1786, March 4, 1916.]
# CONSOLIDATED LIQUOR CO. v. SCOTELLO & NIZZI et al. (BADARACCO, Intervener.)

## SYLLABUS BY THE COURT.

1. Sections 4296-4298, Code 1915, held not to authorize the intervention in an attachment proceeding by a landlord to assert his landlord's lien upon property seized under the attachment writ.                              P. 487

2. Both courts of law and courts of equity have the inherent power to prevent the abuse of their process to the detriment of third parties by supplying the means, in the principal action, of trying the title to property in the custody of the law. This is a rule of necessity, not a rule of convenience, and is available only when no other adequate remedy exists.                                             P. 491

Appeal from District Court, Bernalillo County; H. F. Raynolds, Judge.

Action by the Consolidated Liquor Company against Scotello & Nizzi and others, wherein Guiseppe Badaracco intervened. From judgment for defendants, plaintiff appeals. Reversed and remanded, with directions to dismiss the intervention.

MARRON & WOOD of Albuquerque, for appellant.

Court should have granted motion to strike intervening petition.

Secs. 2947 to 2949, C. L. 1897; Flournoy v. Bullock, 11 N. M. 87, 103; Field v. McMillan, 12 N. M. 40; Pa. Steel Co. v. New Jersey Co., 4 Houst. (Del.) 572; Loving v. Eds, 8 Iowa, 427; Kimbrough v. Clark, 17 Neb. 403; Gates v. Pa. Land Co., 6 Ohio Cir. Dec. 163; Risher v. Gilpin, 29 Ind. 53; Stanley v. Foote, (Wyo.) 63 Pac. 940; Cornell Co. v. Boyer, (R. I.) 82 Atl. 385; Dorroh v. Bailey, (Tex.) 125 S. W. 620.

PIERCE & PIERCE of Albuquerque, for appellee.

Intervention petition was not filed under Secs. 2947-9, C. L. 1897, but on theory property was in custody of the court and could not be reached by ordinary process of law. Trust Co. v. Cable Co., 8 N. M. 327.

## OPINION OF THE COURT.

PARKER, J.—This is an appeal from a judgment of the district court of Bernalillo county, awarding to an intervener a judgment, establishing his landlord's lien and awarding him a certain portion of a fund in the hands of the court to satisfy said judgment. The original action was begun by the plaintiff, appellant here, against the defendant to recover a sum of money for goods, wares, and merchandise sold and delivered. There was also an attachment issued in the case and levied upon the property of the defendant, which was situated in the building of the intervener. The action was begun on the 6th day of January, 1914. On the 24th day of January, 1914, the intervener filed his petition in intervention, and his intervention was allowed by the court. On the 26th of January, 1914, the plaintiff petitioned the court for an order of sale of the property as perishable, and the order of sale was then made. The property was sold by a person appointed by the court, and he brought in the proceeds of the sale and deposited the same in the registry of the court. On the 27th of January, 1914, one of the defendants answered the complaint and attachment affidavit. On the 28th of January, 1914, a motion to strike the petition in intervention was filed upon the grounds: (1) Because the said intervener had no right to file his petition as appears on the face of the petition; (2) because the court did not grant leave to file the intervention petition; (3) because the intervener had lost his landlord's lien by taking a judgment for the amount due in the court of the justice of the peace in precinct No. 12 of said Bernalillo county. This motion was overruled by the court. On the 24th of March, 1914, a trial was had

between plaintiff and defendants, and a judgment was awarded, sustaining the attachment and awarding recovery on the main issue. On the 15th of May, 1914, without notice to the plaintiff, a judgment by default for want of an answer was rendered in favor of the intervener against the plaintiff and defendants for $130.50, being $100.50, the amount for which the intervener claims his landlord's lien, and $30 for the use and occupation of the same premises after the attachment, and establishing the intervener's prior lien upon the fund in the hands of the court, and ordering the clerk to pay the amount to the intervener out of said fund. On the 19th of January, 1915, a motion to vacate the judgment in favor of the intervener was filed upon the grounds: (1) That the plaintiff was not in default at the time of the entry of said judgment; (2) because no time had been fixed by the court for pleading to the intervening petition, nor had any rule or order been procured requiring the plaintiff to plead thereto; (3) because no motion for said judgment was filed in the cause; (4) because no notice of the application for judgment was given to plaintiff; (5) because plaintiff has never been heard upon the issues and questions presented by the intervening petition; (6) because the facts stated in the intervening petition are insufficient to warrant an intervention in the original acion; (7) because no order was ever made allowing the intervention. This motion to vacate the judgment was overruled by the court.

[1] The most important question presented and argued in the briefs is the question of the right to intervene in a case of this kind. It is argued by counsel for appellant that the petition in intervention was filed under the provisions of our intervention statute (sections 4296-4298, Code 1915.) If this contention is correct, there is undoubtedly, under the previous holdings of the territorial court, no right to intervene in this case on the part of the intervener. Section 4296, Code 1915, provides as follows:

"Any person who has an interest in the matter in litiga-gation in the success of either of the parties to the action, c1 against both, may become a party to an action between other persons, either by joining the plaintiff in claiming what is sought by the declaration, or by uniting with the defend-ants in resisting the claim of the plaintiff or by demanding anything adversely to both the plaintiff and the defendant, either before or after issue has been joined in the cause and before the trial commences."

This section was first considered by the territorial court in the case of C. J. L. Meyer & Sons Co. v. Black, 4 N. M. (Gild.) 352, 16 Pac. 620. Action was brought by the Meyer Company in assumpsit against Black, and the at-tachment was issued and levied upon the property which had been assigned by Black for the benefit of creditors. The assignee intervened, claiming to own and hold the property for the purposes stated in the deed of assign-ment. In deciding that the assignee had no interest in "the matter in litigation," the court said:

"The statute declares that any person who has an interest in the matter in litigation may become a party, etc. Now, it is clear that the matter in litigation was the alleged indebted-ness from Black & Co. to plaintiff. The facts set forth in the petition of intervention, which must be the facts upon which the intervention rests, do not show any interest that Fenton may have in the indebtedness alleged in the declaration to be due plaintiff from defendant, nor that he would in any way be affected by the judgment which might be rendered, but, on the contrary, they show an utter absence of interest therein. * * * It is true that a portion of this property has been attached by plaintiff, but that fact does not make the prop-erty or its ownership one of the essential questions to be de-termined in the litigation between plaintiff and defendant Whether the property belongs to defendant or to Fenton, as assignee, would, if determined, shed no light upon the fact distinctly alleged by plaintiff in his declaration, and as dis-tinctly denied by defendant in his plea, namely, that defend-ant was indebted to plaintiff."

In Lewis v. Harwood, 28 Minn. 428, 10 N. W. 586, the reason for holding that under circumstances of this kind the intervener has no right to intervene, the Su-preme Court of Minnesota said:

"The subject-matter which the plaintiff presented to the court, by his complaint, for adjudication, was the indebted-

Consolidated Liquor Co. v. Scotello & Nizzi, 21 N. M. 485.

ness of the defendants to him upon the promisory notes. In a legal point of view the interveners had no interest whatever in the question of the existence or nonexistence of such indebtedness. That was a matter wholly between the plaintiff and the defendants, with which no stranger had a right to interfere. When the judgment was entered against the defendants, the whole original subject-matter of the suit was disposed of; and the case presents the anomaly of a contention, still going on, to eventuate in another and independent judgment, leaving the first judgment in full force. This is not intervention to protect an interest in the matter in litigation, but the introduction of a new subject of litigation. It is true, the new subject-matter grows out of the attachment; but a writ of attachment is a part of the remedy, and has nothing to do with the cause of action. If property is seized by virtue of the writ to which another has a better right, the vindication of such right involves a new and independent judicial inquiry. * * * It may be that it would be a convenient and useful practice to determine all questions as to the ownership and right of the avails of property seized on legal process in the suit in which the seizure was made, and to determine all questions of preference between different attaching or execution creditors in one of the suits, under proper regulations, devised to protect the rights of all parties; but to justify such a practice we are satisfied there ought to be a more distinct expression of the legislative will."

The holding in this jurisdiction is evidently a minority doctrine. Thus, in Potlatch Lumber Co. v. Runkel, 16 Idaho, 192, 101 Pac. 396, 23 L. R. A. (N. S.) 536, 18 Ann. Cas. 591, the Supreme Court of Idaho, in discussing a statute identical with ours, lays down what we believe to be the majority doctrine, and holds that in a case like the one at bar, the right to intervene under the statute is plain. The court says:

"The contention is made that since there is no contest between the plaintiff and defendant over the title of the attached property, and that the only contest between them is over the indebtedness, therefore the intervener should not be let in to present another issue. That proposition is really the cause of confusion in this case. But the difficulty is dissipated when we remerber that the intervener is in no respect interested in the question as to whether the defendant is indebted to the plaintiff or not. The interest of the intervener here is to show that neither plaintiff nor defendant has any interest in this property. In fact, she would not be permitted to interpose a defense personal to the defendant and in the result of which she could have no interest one way or the other.

*   *   *   The plaintiff, however, by reason of causing the
intervener's property to be attached by provisional remedy,
has reached out, by process in the nature of a proceeding in
rem, and laid hold upon certain property as security for the
payment of any judgment it may obtain. * * * The plain-
tiff has therefore brought the issue as to the ownership of this
property into the case. It has cast a cloud upon Mrs. Runkel's
record title. If it obtains a judgment against the defendant,
then execution will issue against this property. If a sale
should be made, it would become necessary for Mrs. Runkel
to prosecute an action to remove the cloud and quiet her
title. If the property is not sold, it would still be necessary
for her to prosecute her action to remove the cloud of the
attachment, unless the plaintiff should voluntarily relinquish
the lien. It is for just such cases and for the purpose of pre-
venting circuity and multiplicity of litigation that the statute
authorizing intervention by strangers was enacted. * * *
The fact that the intervener has another remedy, and may not
be barred by a judgment in the action, is no reason for deny-
ing her the right to intervene. In Coffey v. Greenfield, 55
Cal. 382, the court, in speaking of the extent of interest neces-
sary to entitle a party to intervene, said: 'The fact that the
interener may or may not protect that interest in some other
way is not material. If he has an interest in the matter in
litigation or in the success of either of the parties, he has a
right to intervene.' "

See, also, extended note to this case in 23 L. R. A. (N.
S.) supra, and in 18 Ann. Cas. 594, where the cases are
collected. In Vorenberg v. Bosserman, 17 N. M. 433,
120 Pac. 418, a case exactly like this one, intervention
was allowed, and went unquestioned by the parties, and
was not considered by this court.

If this were a new question in this jurisdiction, we
would feel no hesitancy in interpreting our statute as in-
cluding the right of a person claiming property, or a lien
thereon, which has been attached in an action against
another person, to intervene and assert his rights in that
action. We do not feel at liberty, however, in view of
the previous decisions of the territorial court, to depart
from the holding therein made, and deem it best to leave
the matter for legislative determination. How it can be
said that a person whose property has been attached, or
who has a lien upon property which has been attached in
an action against a third person, has no interest in the
question as to whether the attachment shall be sustained

and the property subjected to the payment of the judgment, we are unable to understand. Such an intervener has a direct interest that his property, or property upon which he has a lien, shall not be subjected to the payment of another person's debt to his detriment. See, also, Pomeroy's Code Remedies (4th ed.) § 323 et seq., for a discussion of this proposition.

[2] The intervener expressly disavows any reliance upon our intervention statutes, and bases his right to intervene in this case upon the doctrine of Flournoy v. Bullock, Baker & Co., 11 N. M. 87, 66 Pac. 547, 55 L. R. A. 745. That was a case where a simple contract creditor intervened in the litigation (it being a suit in equity, brought by one of the partners to put the property belonging to a partnership into the hands of a receiver, convert it into cash, and divide the proceeds among the several creditors of the firm), and to recover a judgment on his claim against the partnership and one of the partners on such intervention. The intervention was denied upon the ground that the simple contract creditor had no such interest in the litigation as authorized intervention. The court, however, made the following observation:

"It would be very different if Champion had first obtained a judgment at law and had then filed his petition, alleging that recovery on execution could not be had on account of the property being in the hands of the court, through its receiver, and asking leave to assert his right to the property in the hands of the court. This principle is recognized by the Supreme Court of the United States. · Adler v. Fenton, 24 How. 407 (16 L. Ed. 696); Scott v. Neely, 140 U.'S. 106 (11 Sup. Ct. 712, 35 L. Ed. 358); National Tube Works v. Ballou, 146 U. S. 517 (13 Sup. Ct. 165, 36 L. Ed. 1070); Hollins v. Brierfield Coal Co., 150 U. S. 371 (14 Sup. Ct. 127, 37 L. Ed. 1113); Cates v. Allen, 149 U. S. 451 (13 Sup. Ct. 883, 977, 37 L. Ed. 804)."

It is upon this statement that the intervener relies to sustain his right to intervene in this case.

It is to be observed, however, that the intervener in this case does not come within the terms of the proposition laid down in the Flournoy Case, supra. When the attac'ment in this case was levied upon the goods of the defendant, they were in his possession and in his premises

as landlord. He had a judgment for the amount due him for rent, and had two plain, adequate and speedy remedies in which he could assert and maintain his rights, viz., either an action of replevin against the sheriff, or an action for the conversion of the property against the plaintiff and the sheriff. He was in no way deprived of his opportunity to maintain his right by the fact of the attachment of the property. For a long time after the levy of the attachment the goods remained in the intervener's premises, and during all of that time he might well have maintained one or the other of these actions. The fact that the property was afterwards, by order of the court upon the motion of the plaintiff, sold and converted into money would not seem to relieve the intervener from the necessity of asserting his legal rights in an independent action. He, however, chose to intervene in the attachment case, and allowed the property to be sold by order of the court.

There is a well-recognized principle that both courts of law and courts of equity have the inherent power to prevent abuses of their processes by supplying a means, in the principal suit, of trying the title to property in the custody of the law. This is a rule of necessity, not a rule of convenience. It becomes applicable most frequently in cases where property has been placed in the hands of a receiver, or in cases where property has been attached, and for some reason stranger to the proceedings, who claims the property or a lien thereon, is so circumstanced that he has no other remedy than to apply for admission into the main action. Thus in Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145, it is said:

"No one, even in equity, is entitled to be made or to become a party to the suit unless he has an interest in its object (Calvert, Parties, 13); yet it is the common practice of the court to permit strangers to the litigaion, claiming an interest in its subject-matter, to intervene on their own behalf to assert their titles. 'When any person,' says Mr. Daniel (Ch. Pr. c. 26, § 7, p. 1057), 'claims to be entitled to an estate or other property sequestered, whether by mortgage or judgment, lease or otherwise, or has a title paramount to the

sequestration, he should apply to the court to direct an inquiry whether the applicant has any, and what, interest in the property sequestered.· This inquiry is called an examination pro interesse suo; and an order for such an examination may be obtained by a party interested, as well where the property consists of goods and chattels or personalty as where it is real estate. Thus, in Martin v. Willis, 1 Fowl, Ex. Pr. 160, a person claiming title to goods seized under a sequestration obtained an order for an examination pro interesse suo, and in the meantime that the goods might be restored to him on his giving security.' The same practice prevails in cases where property is put into the hands of a receiver. Dan. Ch. Pr. c. 39, § 4, p. 1744. The grounds of this procedure are the duty of the court to prevent its process from being abused to the injury of third persons, and to protect its officers and its own custody of property in their possession, so as to defend and preserve its jurisdiction; for no one is allowed to question or disturb that possession except by leave of the court."

In Gumbel v. Pitkin, 124 U. S. 131, 8 Sup. Ct. 379, 31 L. Ed. 374, it is said:

"As we have already seen, and as has been many times declared by this court, the equitable powers of the courts of the United States, sitting as courts of law, over their own process, to prevent abuse, oppression, and injustice, are inherent, and as extensive and efficient as may be required by the necessity for their exercise, and may be invoked by strangers to the litigation as incident to the jurisdiction already vested, without regard to the citizenship of the complaining and intervening party. This is the equity invoked by the plaintiff in error, which was denied to him by the circuit court,"

The doctrine of the federal courts on this subject is based upon the proposition that whenever the federal courts have taken possession of property, either by attachment or by receiver, the possession of the property is in the court, and cannot be disturbed by any process emanating from any other court. Therefore a stranger to the proceeding who has rights in the property, having no other legal remedy, is permitted to come into the court having custody of the property and assert his rights so that injustice may not be done. The doctrine is not put upon the ground of convenience, it is put upon the ground of necessity, in that the stranger to the litigation may not

be deprived of his property rights, and the process of the court abused. This practice was known to the common law, and is well recognized. In the Krippendorf Case, supra, it is described as follows:

"The form of the proceeding, indeed, must be determined by the circumstances of the case. If the original cause, in which the process has issued or the property or fund is held is in equity, the intervention will be by petition pro interesse suo, or by a more formal, but dependent, bill in equity, if necessary. Relief, either in a suit in equity, or an action at law, many properly be given, in some cases, in a summary way, by motion merely, supported by affidavits. In actions at law, where goods have been taken in execution after judgment, or upon attachment before, a proceeding in the nature of an interpleader might be appropriately ordered by the court., such as was given in the English practice to the officer by the Stat. of 1 & 2 Will. IV, c. 58 (2 Lush. Pr. (by Dixon) 777), and in that the respective rights of the claimants to the property could generally be tried as in an action at law by a jury, upon a formal issue framed for that purpose, or with the consent of the parties by the court, or, if the claim was such as that it could be determined only upon principles of equity, as administered in courts of that general jurisdiction, it would be proper to provide relief upon a bill of that nature, filed for that purpose. If the statutes of the state contained provisions regulating trials of the right of property in such cases, it might be most convenient to make them a part of the practice of the court, as contemplated by sections 914-916 of the Revised Statutes (U. S. Comp. St. 1913 §§ 1537, 1539, 1540). In whatever form, however, the remedy is administered, whether according to a procedure in equity or at law, the rights of the parties will be preserved and protected against judicial error, and the final decree or judgment will be reviewable, by appeal or writ of error, according to the nature of the case."

See Trust Co. v. Cable Co., 8 N. M. 327, 43 Pac. 701, where this principle was applied.

As before seen, the intervener had two adequate remedies at law when the property upon which he had a landlord's lien was attached. There was no controlling necessity for him to resort to the equitable powers of the court in the main case to protect his interests, and we do not think the principle under discussion is available under the circumstances. The fundamental principle underlying legal procedure is that parties to a controversy

Consolidated Liquor Co. v. Scotello & Nizzi, 21 N. M. 485.

shall have the right to litigate the same free from the interference of strangers. Aside from the provisions of the intervention statute, this principle is all-controlling, except in those cases where, from the circumstances in which a party is placed, he has no remedy other than to appeal to the court in which the controversy exists, so that its judgment and process may not be abused or made the means of oppression and injustice.

It follows that the court was in error in permitting the intervention in this case, and for that reason the judgment will be reversed.

We cannot dismiss the consideration of this case without again calling attention to the anomalous condition in which we are in regard to the construction of our intervention statute. We feel that the holding in the case of Meyer v. Black, 4 N. M. (Gild.) 352, 16 Pac. 620, is unsound in principle, and should be corrected by statute. It has stood the test of time since 1888, and the Legislature since that time has never seen fit to modify it, but has extended the right of intervention to garnishment proceedings, partition proceedings, and replevin proceedings. See sections 2543, 4342, 4382. It has allowed the intervention statute and its construction by the territorial court as to attachment cases, however, to stand unchanged. This is an additional consideration which causes us to refuse to depart from the previous holding of the court.

For the reasons stated, the judgment of the lower court is reversed, and the cause remanded, with instructions to dismiss the intervention; and it is so ordered.

ROBERTS, C. J., concurs.

HANNA, J.—I dissent from the majority opinion in this case because I feel that too much importance is attached to the early opinion of the Territorial Supreme Court in the case of Meyer & Sons Co. v. Black, 4 N. M. (Gild.) 352, 16 Pac. 620. While fully appreciating that the maxim stare decisis should not be lightly departed

from, and that a refusal to apply the maxim should be controlled by substantial reasons, nevertheless the present case. appeals to me as one that should not be governed by the application of this principle. The rule laid down in the Meyer Case is not a rule of property, and the only ground upon which sound argument can be based that the decision should not now be questioned is that it has stood unchallenged for a long period of years. No private rights depend upon the maintenance of the rule in the Meyer Case which we concede to be erroneous; and, while the rule may be said to be simply one of practice, yet it defeats the entire purpose of the intervention statute so far as attachment proceedings are concerned. The object of this statute was undoubtedly to prevent multiplicity of suits; and, if the statute should control under the facts of this case but for the precedent in the Meyer Case, as we believe, the intervener in this case, as well as all others under similar circumstances, is deprived of a substantial remedy, and the beneficial purpose of the act is denied to all litigants of this class. It would therefore seem to be clear that the greater good is to be served by a departure from this ancient and erroneous decision, and that no substantial reason exists for our present adherence to this precedent.