150 P.2d 122

**LAWSON v. SERNA.**
No. 4803.

Supreme Court of New Mexico.
June 30, 1944.

Shipley & Shipley, of Alamogordo, for appellant.

J. L. Lawson, of Alamogordo, for appellee.

MABRY, Justice.

This is a suit to quiet title to certain real property, the title relied upon being

based upon a tax deed. Plaintiff-appellee prevailed in the suit and one of the defendants, Merced Serna, appeals. Appellant Serna (hereinafter referred to as defendant) challenges the findings, conclusions and judgment of the court as being without support in either facts and law. In view of our decision it is not necessary to resolve all these contentions. The findings pertinent to our conclusion, and necessary to be noticed, are not assailed by appellee.

We need to notice only two points advanced: (1) Was the assessment upon which the tax deed of plaintiff was based a double assessment and therefore void? (2) Was the interest of defendant in the property such as would, in any event, permit her to defend against plaintiff's claim and to assert the invalidity of the tax title?

Defendant, and her predecessors in title, had, since 1908, occupied and claimed ownership in the property in question under the designation of "lot No. 2 of 'Orchard Addition' to the town of Alamogordo", and had, at least since 1927, rendered the property for taxation under such designation and description and regularly paid the taxes thereon either by direct payment or by having such taxes liquidated through the statutory allowance of exemption.

It is conceded that no taxes remained unpaid on the property for any year since 1927, including the year 1938, the year for which the double assessment is alleged to have been made as hereinafter shown and from which alleged double assessment flow-

ed the tax deed upon which plaintiff relies in his suit here.

Upon the trial of the case it was found by the court upon sufficient evidence in support that there had never been any official platting or designation of such area as "Orchard Addition" to the town of Alamogordo; and upon this plaintiff relies in urging that the assessor was authorized, in his effort to get a more accurate description of the property invloved, to direct the making of an additional assessment for 1938 based upon a description by metes and bounds.

Plaintiff lays considerable emphasis upon the point that defendant, in any event, being without actual title to the property, although claiming it over the years, is in no position to question the act of the Assessor in so securing a metes and bounds survey and having a double assessment laid in 1938, even if it should be held that the subsequent and additional assessment was in fact a double assessment and should not have been made.

It is argued that neither defendant nor her predecessors in title, although occupying the land in question since 1908, ever had title or any instrument in writing upon which to base color of title since the property was always held by them under nothing more than a contract between defendant's predecessors in title and another to thereafter sell and convey upon the payment of the stipulated purchase price; and that a mere contract to thereafter convey by deed

does not afford that color of title necessary to support title by adverse possession.

The paper title relied upon must "purport to convey" title, says plaintiff. Although this seems to be the rule, we need not decide whether, under the circumstances here present, defendant could not in fact rely for color of title upon this particular contract. In this connection, however, see Armijo v. Armijo, 4 N.M. 57, 13 P. 92; Solomon v. Yrisarri, 9 N.M. 480, 484, 54 P. 752; Chambers v. Bessent, 17 N.M. 487, 489, 134 P. 237. "To be available as color of title, a deed should purport to convey title to the land in controversy and apparently do so * * *." 2 C.J.S., Adverse Possession, p. 590, § 72. But certain classes of contracts for a deed have been construed by some courts as affording color of title. Id., § 74(e); 88 Am.St.Rep. 718 (Note).

In view of what is hereafter said, it does not become necessary for us to determine whether this particular contract affords defendant color of title. The second assessment of 1938 was, under the circumstances, a double assessment upon which defendant is entitled to rely in defense of plaintiff's suit to quiet title, and it becomes unimportant in this suit as to what character of title, if any, she possessed.

It is not disputed that since 1927 plaintiff has regularly paid her taxes—or has been credited with her statutory exemption therefor. The taxing authorities had always taken her rendition of the property as "lots 1–2 Orchard Addition", or by similar designation, without an examination as to location, ownership or correctness of description, until a more careful examination of the assessment and the property itself was made by Assessor Longwell in the year 1939. He was then checking property generally for unknown ownership; and he examined the tract in question, designated as lot 2 of Orchard Addition. He discovered no such addition as "Orchard Addition". Also, concluding, evidently, that the ownership was unknown, although he knew defendant "claimed" the property, he then determined that the property should be classified and assessed to "unknown owners". The tax rolls had then, in due course, been turned over to the County Treasurer and the Assessor requested this officer to so assess the property for which he, the Assessor, had secured a description by metes and bounds.

█ It may be conceded that the Assessor was, in good faith, endeavoring to get a better and more definite description of the land in question for the purpose of making an accurate assessment; but good faith is not enough. The Assessor knew that defendant at least claimed ownership. 1941 Comp. sec. 76-723 prohibits the assessment to "unknown owner" where "claimed" ownership is known, and the curative provisions thereof do not aid where the taxes are not "unpaid at the time of sale."

It is not a question of whether defendant had any actual property right in and to the lot in question if tested in a proper proceeding; but it is a question of whether

plaintiff's title, resting upon a deed flowing from a double assessment of the identical property theretofore assessed to defendant (and upon which no taxes remain unpaid) although under an erroneous and imperfect description, can, under the circumstances, be defeated.

"Orchard Addition" was a designation by which this and like property of some other taxpayers had been identified for purposes of assessment; the Assessor was familiar with the description and much of the property covered thereby, including the property in question, although it must be said that no map or plat of such addition had ever been filed as required by law.

The Assessor making this double assessment had himself taken, accepted and employed the old "Orchard Addition" designation in two former years, not to say that all of his predecessors in office had, at least since 1927, likewise assessed under the same description. The taxing authorities chose to treat the assessments made over the years as valid assessments; no question as to the identity of the property involved was ever raised. It cannot be said here, as it could be said in the case of Knight v. Fairless, 23 N.M. 479, 169 P. 312, that this was a mere blanket assessment which contained "no clue" to the identity of the property; and it is to be distinguished also from the case of Harris v. Friend, 24 N.M. 627, 175 P. 722, a case in which the property in question had not been returned for taxation and where there was "no intention to pay taxes." Mutual Inv. & Agency Co. v. Al-

buquerque Farm & Ranch Land Co., 34 N. M. 10, 275 P. 92, 93; Shackelford v. McGlashan, 27 N.M. 454, 202 P. 690, 23 A.L.R. 75.

Ordinarily, one without interest in, or right or title to property involved in litigation will not be permitted to influence the course of litigation, we know. This is not, however, such a case as was involved in Consolidated Liquor Co. v. Scotello & Nizzi, 21 N.M. 485, 115 P. 1089, relied upon by plaintiff. Plaintiff seeks to quiet his title to land in which he claims ownership by virtue of what we have denominated an unauthorized double assessment, and sale thereunder to him. Knight v. Fairless, supra, is easily to be distinguishd. We are here called upon, primarily, to determine whether the tax has been paid by defendant upon the identical property which was thereafter erroneously sold for failure to pay. The matter of a technically accurate description as to the earlier assessment is here incidental; the test is not whether it is such a description as would "support a tax title as against the owner". Shackelford v. McGlashan, supra. See also Mutual Inv. & Agency Co. v. Albuquerque Farm & Ranch Land Co., supra. To quote from the Shackelford case [27 N.M. 454, 202 P. 691, 23 A.L.R. 75]:

"We are determining whether payment under an assessment, invalid because it fails to describe the land sufficiently for identification, is good payment on the land intended to be assessed, so as to avoid a sale under another assessment with a proper description.

"The primary purpose of every law for the enforcement of tax liens is to obtain payment of the tax. The end desired is the obtaining of the funds necessary for governmental purposes. If that payment has been obtained, the primary purpose of the law has been accomplished, and this is true whether or not payment is made with technical accuracy. While the law provides for a tax sale and allows a purchaser at such sale to acquire title, divesting the former owner, that is but a method by which the county obtains its funds. The owner of the land having failed to pay, the county obtains its money from another. Under our statutes the puchaser at such a sale is amply protected. If the sale is invalid for the reason that no tax is in fact due, he recovers back from the county the amount which he paid to it. If his sale is valid, he obtains under it property usually worth many times the amount which he pays. He has all to gain and nothing to lose. The remedy as against the owner of the land is a harsh one in any event, and to hold that, where he has in good faith attempted and intended to return his land and to pay the taxes upon it, he must nevertheless lose it because of a failure to obey the provision of law which says that his assessment must properly describe the land, is to lay down too severe a rule. While it is true that the result would come from his own fault, the forfeiture of his property would be punishment far greater than the offense."

In this case we quoted with approval from the case of Meller v. Hodsdon, 33 Minn. 366, 23 N.W. 543, 544, where it is stated:

"It is not necessary to consider whether the description would be sufficient to support a tax title as against the owner; but, upon the issue of payment by him of the taxes, under the assessment originally made, we see no reason why the facts we have recited were not proper to be shown in evidence, and, upon them, we think the finding warranted that the taxes lawfully levied upon defendant's land in lot 2, for the years in question, were actually paid by him."

This being a suit to quiet title, plaintiff must, under the circumstances, rely upon the strength of his own title and not upon the weakness of that of his adversary. We are not called upon to determine what character of title Merced Serna might have, if any. We hold, simply, that plaintiff has none.

"It is settled beyond further controversy. in this jurisdiction that as a general rule in a suit to quiet title the plaintiff must recover, if at all, upon the strength of his own title and not upon the weakness of. that of his adversary. Union Land & Grazing Co. v. Arce, 21 N.M. 115, 124, 152 P. 1143." New Mexico Realty Co. v. Security Investment & Dev. Co., 27 N.M. 664, 204 P. 984, 985. See also Abeyta et al. v. Tafoya, 26 N.M. 346, 192 P. 481.

The judgment is reversed, with direction to the trial court to reinstate the cause upon its docket, set aside the judgment hereto-

fore rendered and to enter judgment dismissing plaintiff's cause of action as one founded upon a void and ineffective deed.

And, it is so ordered.

SADLER, C. J., and BICKLEY, BRICE, and THREET, JJ., concur.