255 P.2d 311

**PRATT et al. v. PARKER et al.**

No. 5428.

Supreme Court of New Mexico.
Jan. 23, 1953.

Rehearing Denied March 26, 1953.

Sherman & Hughes, Deming, for appellants.

Shipley & Shipley, Alamogordo, for appellees.

LUJAN, Justice.

The plaintiffs (appellants) brought this action in the District Court of Otero County to quiet title to Lot 13, Section 5, Township 16 South, Range 10 East, and other land not involved herein, situated about six miles north of the City of Alamogordo, New Mexico, against the defendants (appellees), asserting a fee-simple title based upon an inheritance from their parents. The defendant, C. J. or John Parker claims title under a deed issued to him by the State Tax Commission. The defendants, L. H. Riddle and J. W. Parker base their titles on warranty deeds given to them by C. J. or John Parker. The defendant Barr Fifer bases his title on a warranty deed given him by J. W. Parker. The case was tried to the court without a jury which resolved the issues in favor of the defendants and plaintiffs appeal.

The record discloses that on October 19, 1925, C. J. Nevell and his wife conveyed the lot in question to A. M. Horne which was described as hereinabove mentioned, also Lot 12, Section 6, Township 16 South, Range 10 East, which is not involved in this suit.

On November 9, 1925, A. M. Horne and his wife, Lou Horne, conveyed a one-half interest in Lot 13, Section 5, Township 16 South, Range 10 East, to W. K. Stalcup. On May 3, 1927, W. A. Stalcup, a single man, conveyed his one-half interest in said lot to A. M. Horne. For the year 1927 W. A. Stalcup rendered for taxation Lot 13, Section 6, Township 16 South, Range 10 East, and Lot 12, Section 5, Township 16

South, Range 10 East. In so doing he designated the section numbers erroneously.

During the year of 1927, C. E. Mitchell, acting as agent for A. M. Horne, rendered this lot for taxation as situated in Section 6 instead of in Section 5, and continued to do so up to and including the year of 1943. From 1927 through 1948, with the exception of 1944, the lot was described in the tax rolls as Lot 13, Section 6, Township 16 South of Range 10 East, and the taxes were regularly paid and receipts issued under this description by A. M. Horne or his predecessor in title. For the year 1944 the lot is described on the tax rolls as Lot 13, Section 5, Township 16 South, Range 10 East, and the taxes were paid by the A. M. Horne Estate and a receipt issued showing that description.

For the years 1927 to 1937, both inclusive, Lot 13, Section 5, Township 16 South, Range 10 East, was assessed to "unknown owners" and no taxes were paid for said years under said rendition and description. On December 7, 1934, this lot was sold to the State of New Mexico, and on March 9, 1935, Tax Sale Certificate No. 341 was issued to the State pursuant to said sale, for the delinquent taxes for the year 1933. On March 18, 1937, the County Treasurer issued Tax Deed No. 206 to the State of New Mexico for the above lot pursuant to the sale of said property held on December 7, 1934.

On April 25, 1942, the State Tax Commission executed and delivered to C. J. Parker its deed conveying the lot in question to him. On January 26, 1948, C. J. or John Parker and Josie Parker, his wife, made, executed and delivered to L. H. Riddle a warranty deed conveying a tract of land in the northeast corner of Lot 13, Section 5, Township 16 South, Range 10 East, described as follows:

"Beginning at the northeast corner of said Lot 13, thence west 570 feet, thence south 210 feet, thence east 570, thence north 210 feet, to the place of beginning."

On February 2, 1948, C. J. or John Parker and Josie Parker, his wife, made, executed and delivered to J. W. Parker a warranty deed conveying all of Lot 13, Section 5, Township 16 South, Range 10 East, save and except the land above described in the conveyance to L. H. Riddle. On November 22, 1948, J. W. Parker and Maud M. Parker, his wife, made, executed and delivered to Barr Fifer a warranty deed conveying to him all of Lot 13, Section 5, Township 16. South, Range 10 East, except the land previously conveyed to L. H. Riddle as described above.

It is plaintiffs' contention that since they and their predecessors in title in good faith paid taxes under an assessment on Lot 13, Section 6 in Township 16 South,

Range 10 East, thinking and intending the payment to cover taxes on Lot 13, Section 5 in said Township and Range, such payment under the facts shown constitutes a good defense against the sale and tax deed based upon a second assessment of the same land with a proper description. We think this contention is well taken.

The appeal in this case presents the identical question urged in the case of Shackelford v. McGlashan, 27 N.M. 454, 202 P. 690, 691, 23 A.L.R. 75. In that case John Schroeder owned a tract of land in Bernalillo County. He described that tract of land incorrectly in his rendition as Precinct 1, Section SW¼ Tp. 17, Tp. 7, Range 5 E, 160 acres. The assessor did not copy the description in Schroeder's rendition exactly, but entered an assessment against him for SW¼ Sec. –, Tp. 17, R. 5 E, on which he paid, intending to pay the taxes on the tract of land he owned. The land described in the assessment under which Schroeder paid would be located in Sandoval County and not in Bernalillo County. For the same year the assessor made an additional assessment under "unknown owners" in which he correctly described the land owned by Schroeder as SW¼ Section 17, Tp. 9, R. 3 E. Schroeder had no actual notice or knowledge of this assessment. After Schroeder had paid the taxes under the assessment above set out, containing the incorrect description of his lands, the land was sold under the assessment to "unknown owners," and such proceedings were had that the tax title thus instituted became vested in A. E. McGlashan under a tax deed from the county. Later McGlashan and his wife conveyed the land by warranty deed to D. V. Wardall, who, with his wife, and likewise by warranty deed, conveyed the premises to J. J. Weisendanger. On this state of facts the court said:

"The question in this case is whether payment of the tax has in fact been shown, or, in other words, whether payment under this assessment which improperly described the land was good payment on the land he owned. It is conceded that appellant intended by this payment to pay the tax on his land and believed that he was doing so."

(In the case at bar the plaintiff, Yukola Horne Pratt, testified that she intended to pay the taxes on the land previously owned by her father and believed that she was doing so.)

In the Shackelford case, the court continued:

"Since the treasurer of the county accepted the money, it must be assumed that he understood it was payment on the same land, for he certainly would not knowingly accept the payment of taxes upon land not within his county. We have, therefore, a case where the owner has paid money to the county as

taxes on a certain piece of land, and the county has accepted it as payment on that land, although in fact the land was not properly described on the tax roll and can only be identified by proof of circumstances wholly apart from the roll itself.

.*     *     *     *     *     *

"Payment in good faith of taxes, although the assessment on which the payment is made erroneously describes the land intended to be assessed, is a defense against a sale and tax deed based upon a second assessment of the same land with a proper description."

The conclusions announced in Shackelford v. McGlashan, supra, find support in still later cases of Mutual Investment & Agency Co. v. Albuquerque, Etc., Co., 34 N.M. 10, 275 P. 92, N. H. Ranch Co. v. Gann, 42 N.M. 530, 82 P.2d 632, on rehearing, pages 542 and 639 respectively, and Lawson v. Serna, 48 N.M. 299, 150 P.2d 122.

■ The lot in question was unfenced, unimproved and unoccupied prairie land at the time it was purchased from the State by J. C. or John Parker. Several valuable improvements have been erected thereon since the defendants purchased it. The plaintiffs recognize it is a cardinal rule of equity that "he who seeks equity must do equity," and, ordinarily, this would consist of an offer to allow the defendants, who own the improvements on the land, to re-

move them. Under the facts in this case, however we do not feel that this would be sufficient.

Following the cases hereinabove referred to, the judgment is reversed and the cause remanded to the district court with directions to it to ascertain the present value of the improvements placed on the lot by the respective defendants and, thereupon, to enter judgment quieting title of the plaintiffs to the lot in question as against each of said defendants, subject to a lien in favor of each of them on said lot for the value of the improvements found to have been placed there by him, as such value is ascertained by the trial court pursuant to the directions aforesaid; the liens mentioned to have equal priority.

Authority supporting by analogy the disposition we are making of this case as to provision for reimbursing the value of improvements is to be found in Shaw v. Board of Education, 38 N.M. 298, 31 P.2d 993, 93 A.L.R. 432, and cases there cited.

It is so ordered.

SADLER, C. J., and McGHEE, COMPTON, and COORS, JJ., concur.

On Motion for Rehearing

LUJAN, Justice.

Defendants (appellees) have moved for a rehearing and therein complain that we

did not discuss certain points argued in their briefs and orally in our opinion. It must not be thought that because we do not reply to all arguments of counsel that such arguments have not been duly considered. In the present instance we thought the matter so well settled that no comment was necessary. However, the zeal and insistence of counsel for defendants have caused us to go over the matter again, and we conclude that it may be of service to the bar if we discuss the points briefly.

In so far as defendants' claim under the plea of ten years adverse possession is concerned, 1941 Comp. § 27–121, even if the sale to the state by the county treasurer had been valid, the fact is that, at the time they acquired the property in question it was purchased from the state and the statute did not run against it.

In order to perfect a title by adverse possession, such possession must be continuous for the entire period prescribed by the statute of limitations. In the case at bar the defendants had actual possession of the lot in question for only eight years at the time suit was instituted by the plaintiffs.

In the case of Armstrong v. Morrill, 14 Wall. 120, 81 U.S. 120, 20 L.Ed. 765, it was held that: "Forfeiture to the state within the period necessary to give effect to the statute, has the effect to break the continuity of adverse possession, and prevents the operation of the statute bar."

In that case the defendant claimed to have acquired certain property in the State of Virginia by adverse possession. The court found that "Beyond all doubt the land described in the deed of Robert Morris and others to the grantors of the plaintiff, became forfeited to the state by reason of the failure to enter the same on the books of the Commissioners of the Revenue." One of the errors complained of was: "That the court erred in the instruction to the jury that the statute of limitations (meaning the statute relating to the acquisition of property by adverse possession) ceased to run when the land became forfeited to the state."

The Supreme Court held that the instruction to the jury was correct, and in the course of its opinion said: "Argument to show that the statute of limitations ceased to run when the forfeiture attached and the title became vested in the State can hardly be necessary, as the rule that time does not run against the State has been held for centuries, and is supported by all courts in all civilized countries."

The court further said:

"Continuity of possession is also one of the essential requisites to constitute such an adverse possession as will be of efficacy under the statute of limitations. Whenever a party quits the possession

the seizin of the true owner is restored, and a subsequent wrongful entry by an- . other constitutes a new disseizin, and it is equally well settled that if the continuity of possession is broken before the expiration of the period of time prescribed by the statute of limitations, an entry within that time destroys the efficacy of all prior possession, so that to gain a title under the statute, *a new adverse possession* for the time limited must be taken for that purpose. (Brinsfield v. Carter, 2 Kelly [Ga.] 143; Ringgold v. Malott, 1 Har. & J. [Md.] 316; Hall v. Gittings, 2 Har. & J. [Md.] 112.)

"Beyond all question the case (last cited) presented the same question as that involved in the case before the court, and the decision was that the forfeiture to the State within the period necessary to give effect to the statute did have the effect to break the continuity of adverse possession, and prevented the operation of the statute bar. Taylor v. Burnsides, 1 Grat. [Va.] 190."

█ In 2 C.J., Adverse Possession, § 162, the general rule is stated as follows:

"Where, during the running of the statute of limitations in favor of the adverse occupant of land, the land is forfeited to the state for taxes, the general rule is that continuity of posses-sion is interrupted for the reason that the statute of limitations does not run against the state in the absence of some special provision to that effect." See also, 2 C.J.S., Adverse Possession, § 152e.

The rule announced in the case of Armstrong v. Morrill, supra, seems to be the general rule. 2 C.J.S., Adverse Possession, § 152e, p. 721; Reusens v. Lawson, 91 Va. 226, 21 S.E. 347; Monroe v. Morris, 7 Ohio 262; Daveis v. Collins, C.C., 43 F. 31; Lawless v. Wright, 39 Tex.Civ.App. 26, 86 S.W. 1039; Wall v. Rabito, 138 La. 609, 70 So. 531. See, also, Burgett v. Calentine, 56 N.M. 194, 242 P.2d 276; Field v. Turner, 56 N.M. 31, 239 P.2d 723; Wilson v. Kavanaugh, 55 N.M. 252, 230 P.2d 979.

██ The plea of adverse possession of ten years is attempted to be sustained by showing that defendants and their predecessor in title (State) had been in possession of the property for more than ten years prior to the filing of this suit on March 7, 1950. But the State of New Mexico owned the land from the year 1938 until it sold the same to C. J. Parker in 1942. Adverse possession did not start to run during the time the state was the owner of the property; and ten years had not elapsed since the state parted with title in favor of defendants.

█ Under the decision of Shackelford v. McGlashan, 27 N.M. 454, 202 P. 690, 23

A.L.R. 75, the sale of the property in question by the treasurer of Otero County to the State of New Mexico was void and the subsequent sale of said property by the State Tax Commission to C. J. Parker, and his conveyance of the same to the other defendants, was likewise a nullity. It follows that the said pretended sale by the county treasurer cannot be the basis for ten years' adverse possession acquirendi causa by the defendants.

■■ Defendants further contend that the plaintiffs have been guilty of laches and for that reason should be denied relief. The defense of laches is not favored. It is only in those cases where the party has been guilty of inexcusable negligence in enforcing a right that the rule has been applied.

"Laches in a general sense is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what should have been done. More specifically, it is inexcusable delay in asserting a right; and implied waiver arising from knowledge of existing conditions and an acquiescence in them, * * *." 21 C.J., p. 210, § 211; 2 C.J.S., Adverse Possession, § 112.

Then on page 245 of the same volume, the author says:

"* * * Another frequent application of the rule occurs in suits on the ground of mistake, where the court in determining whether relief should be denied as for laches, considers only such time as elapsed after the discovery of the mistake."

■ Plaintiffs were nonresidents. They had paid their taxes believing that they were paying them correctly and felt secure in their belief that it was all that was required of them as the holders of the legal title. The taxes had been accepted by the treasurer even though he knew that they were paying taxes under the mistaken description, and must have known what land they intended for them to apply. No actual knowledge of any tax sale or claim by any other person became known to them until July of 1949. Suit was instituted on March 7, 1950, and there does not appear to have been any alteration of conduct by defendants between the date of notice and date of suit. Under these circumstances we feel that if there were any laches on the part of plaintiffs they were excusable laches.

■■ The next question is whether or not plaintiffs are estopped by their actions and conduct from asserting title to the property in dispute, or, in other words, whether their acts have raised them an equitable estoppel. In treating of this question it must be borne in mind that the sale of the property for taxes to the state was absolutely void and that therefore it

had absolutely no title to convey to C. J. Parker. Dye v. Crary, 13 N.M. 439, 85 P. 1038, 9 L.R.A.,N.S., 1136. As the tax sale was null, the defendants cannot now give life and effect to an invalid deed urging against the owners of the lot a plea of estoppel. If C. J. Parker acquired no title to the property from the state, neither he nor his vendees could acquire any by urging the plea of estoppel. There is nothing to show that defendants have been misled by anything done by the plaintiffs. First National Bank of Clayton v. Harlan, 30 N.M. 356, 234 P. 305; Doran v. First National Bank of Clovis, 22 N.M. 236, 160 P. 770. Plaintiffs were not aware of the error in the description of their land, and so far as the records show, they knew nothing of the sale of their property for taxes. They had paid all their taxes for the year for which their property was sold and had no reason to believe that it would be sold for taxes.

It is next claimed that the plaintiffs failed to do or offer equity and hence are not entitled to be heard in a court of equity. This proposition was disposed of in our opinion and needs no further discussion.

 Lastly, it is urged that the two year curative statute of limitations on actions attacking the regularity of assessments and sale of real estate for delinquent taxes, 1941 Comp. § 76–727, is a bar to plaintiffs' recovery. Since the Shack-elford v. McGlashan case, supra, is authority for our holding that the taxes in the instant case had in fact been paid on the disputed land, notwithstanding the erroneous description, the two year curative statute of limitation could not apply.

The motion for rehearing should be denied and,

It is so ordered.

SADLER, C. J., and COMPTON and COORS, JJ., concur.

McGHEE, J., concurs in the result.