## BIRD *v.* BENLISA.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF FLORIDA.

No. 139. Argued January 6, 1892. — Decided January 26, 1892.

When land in Florida assessed for taxation is not assessed to the owner or occupant, or to an unknown owner, and also by an official or accurate description sufficient to impart notice to the owner, the title of the purchaser at a sale made for non-payment of the tax so assessed is not protected by the provision in the statutes of Florida limiting the right of action of the former owner, to recover the possession of the lands sold, to one year after the recording of the tax deed; but the sale and the deed are nullities within the decisions of the Supreme Court of Florida.

THE court stated the case as follows:

This was an action of ejectment brought in the Circuit Court of Orange County, Florida, on May 25, 1887. The action was subsequently removed to the Circuit Court of the United States for the Northern District of Florida. A trial in that court resulted in a verdict and judgment for the defendant in error, plaintiff below. That such judgment was correct, is conceded, unless plaintiff's right to recover was defeated by a tax deed, with accompanying record and possession. That deed purported to be based on a sale for the taxes of 1873, and the description therein was as follows: Section 39, township 16, of range 27; section 37, in township 17, of range 27; and section 38, in township 17, of range 28; containing nine thousand nine hundred and nine and three-quarters (9909¾) acres, lying and being in Orange County, Florida. It was executed December 13, 1876, and recorded the same day. The assessment roll was produced in evidence, and on it was found no description like that contained in the deed. There was, however, this entry, which plaintiff in error claimed was intended as a description of the lands found in the deed. to wit,

| Owner. | Des. of land. | Sec. | Town. | Range. | Acres. | Am't. |
|---|---|---|---|---|---|---|
| Mazell, Partin & Partin..... | Alexander........ Spring Creek..... Grant........... | ... | ... | ... | 7800 | $18 22 |

Defendant relied on section 63 of chapter 1976 of the Laws of 1874, page 27, (which is the same as section 20, chapter 1877, Laws of 1872,) as follows:

"No suit or proceeding shall be commenced by a former owner or claimant, his heirs or assigns, or his or their legal representatives, to set aside any deed made in pursuance of any sale of lands for taxes, or against the grantee in such deed, his heirs or assigns or legal representatives, to recover

the possession of said lands, unless such suit or proceedings be commenced within one year after the recording of such deed in the county where the lands lie, except upon the grounds that the said lands were not subject to taxation, or that the taxes were paid or tendered, together with the expenses chargeable thereon before sale, and the recording of such deed shall be deemed such assertion of title or such entry into possession by the grantee, his heirs or assigns, as to authorize such suit or proceedings against him or them as for an actual entry."

*Mr. J. B. C. Drew* and *Mr. A. H. Garland* (with whom was *Mr. H. J. May* on the brief) for plaintiff in error.

*Mr. J. C. Cooper* (with whom was *Mr. H. E. Davis* on the brief) for defendant in error.

MR. JUSTICE BREWER delivered the opinion of the court.

It is true that this tax deed is regular in form, but there is no connection between the description in it and any to be found in the assessment roll; and it has been held by the Supreme Court of Florida, that the limitation section does not prevent a suit by the owner to recover lands after the lapse of a year, when "the calls in the deed of the clerk are materially different from the lands described on the assessment roll, and sold by the collector." *Carncross* v. *Lykes*, 22 Florida, 587. In that case it appeared that on the assessment roll the land was described as "blocks 10, 12, 13 and 16," while the deed purported to convey "blocks 10, 12 and 13, in the town of Tampa, and according to the general map of said town." In the opinion the court said: "The description of the land on the assessment roll is an important element in the purchaser's title, and it must be sold by the collector and deeded by the clerk in accordance with such description. . . . The statute was intended to prevent, after the lapse of a year, suits by the former owner for recovery of lands upon technical grounds, for informalities and irregularities in the proceedings. It contemplated that the deed of the clerk alluded to would be to lands assessed, and none other. The clerk can only make a

deed to the lands sold by the collector. The collector can only sell the lands as described on the assessment roll. . . . Sec. 20, above, only extends its protection to the lands assessed, because, if other lands, or lands differing materially in description, are deeded by the clerk, the deed 'is not a deed made in pursuance of a sale of lands for taxes,' nor is a suit for the recovery of possession thereof a suit for lands sold for taxes."

In *Grissom* v. *Furman*, 22 Florida, 581, the difference between the description on the assessment roll and in the tax deed consisted simply in a reversal in the numbers of the township and range, the former being " township 21, range 11," and the latter, " township 11, range 21," but it was held that the deed was a nullity. In *Townsend* v. *Edwards*, 25 Florida, 582, the tax deed being regular in form, the trial court had refused to permit the introduction of the assessment roll in evidence. The Supreme Court reversed the judgment, on the ground of error in that ruling, thus reaffirming the cases in 22 Florida. In *Sloan* v. *Sloan*, 25 Florida, 53, an action to remove a cloud upon the title, which cloud consisted in a tax deed, it appeared that this deed was regular in form, but it having been alleged and proved that the assessment was made by the collector of revenue, and not by the assessor of taxes, it was held that the deed was voidable, and was not within the protection of the limitation section heretofore referred to. The court observed : " If the lands were assessed on the roll when it went into the hands of the collector, the owner was presumed to know it, and if he did not pay the taxes and a sale was made, and a deed executed, he was also charged with notice of the consequences which the statute imposed upon him. If the lands were not upon such roll, he was likewise presumed to know it, and that the only consequence was that they would be assessed the next year as well for that as for the preceding year, but the law did not call upon him to anticipate either an assessment or sale by the collector or subject him to the provisions of the sixty-third section on account of such assessment or sale. This tax deed is not within the protection of the sixty-third section, but is a cloud upon the land described in it."

In Kansas, a like ruling has been made as to the necessity of a conformity of the description in the tax deed to that on the assessment roll. *Hewitt* v. *Storch*, 31 Kansas, 488, which ruling was followed by this court in a case coming from that State — *Stout* v. *Mastin*, 139 U. S. 151. It follows, therefore, that on the face of the record there was disclosed no assessment or sale of the lands described in the deed, and the latter must fall within the condemnation of the cases referred to.

But there was testimony tending to show that the tract in controversy was sometimes called in the community the "Alexander Spring Creek Grant," and it is contended by plaintiff in error that an assessment by this description was sufficient, and sustains a deed describing the land with official accuracy. We cannot assent to this proposition. The land was not known to the state or United States records by any such description. A history of the title will be instructive. While Florida was still a Spanish province, and on the 15th of September, 1817, Antonio Huertas petitioned the governor of the province for a grant of 15,000 acres, which petition was on the same day sustained, and a decree entered that such a grant be made. On the 13th of December, 1820, he petitioned for a survey of the grant in four parcels, one being of 10,400 acres, which was approved and the survey made. After the annexation of Florida and prior to the year 1873, by proper proceedings in the Federal court under the authority of the acts of Congress, the title to this tract of 10,400 acres was confirmed to Moses E. Levy, and a survey thereof made and approved by the surveyor general of the United States for that State. Township and range lines were run through the tract according to the general rules for the survey of public lands of the United States, though it does not appear that the boundaries of these lands as surveyed conform fully to such lines. So upon the face of the United States records, the land was known either as the Moses E. Levy part of the Huertas grant, or as described by the survey, or by the township and range numbers.

Now, the second clause of section 17, chap. 1713, Laws of 1869, in reference to assessments, requires:

"A description of each tract or parcel of land to be taxed, specifying under appropriate heads the township, range and section in which the land lies, or if divided into lots and blocks, then the numbers of the lot and block, and the full cash value of each lot, tract or parcel, such value to be taken from the taxpayer under oath."

And section 20 of the same chapter provides:

"If the land assessed be less or other than a subdivision according to the United States survey, and unless the same is divided in lots and blocks so that it can thereby be definitely described, it shall be described by the boundaries thereof, or in such other manner as to make the description as definite as may be."

This land having been surveyed, the separate townships and ranges might have been stated; or if it was all to be assessed as one tract, and the description by the boundaries was too long for insertion, then the description by the name known to the records, and which would impart notice to the owner, should have been used. The owner, as the Florida Supreme Court has repeatedly held, has a right to rely upon the assessment roll, and if his land be not upon it, to assume that it will not be sold; but on the contrary, is liable to be placed upon the roll of the succeeding year. But is he bound to hunt through the assessment roll beyond the proper official description to see if his land may not be found described by some. term which is more or less commonly used in the community?

Further, this tract was one of about 10,000 acres; the original petition was for a tract of 10,400 acres; the United States survey made it 10,457.34 acres; but the tract here assessed was only one of 7800 acres. While accuracy in the number of acres may not be vital, yet so large a variation indicates that another tract was intended, or that only a part of this tract (and which part is not indicated) was assessed; either of which was fatal.

Still further, the law required that the assessment should be in the name of the owner or occupant, with a proviso, that if the land be unoccupied it might be to "unknown owner." Laws 1869, c. 1713, secs. 6, 7, 17 and 19. These lands were

assessed to Mazell, Partin & Partin. There is no pretence that they, or either of them, ever had any title to or possession of, or connection with, the land. Under such circumstances, it has been held by the Supreme Court of Florida that the assessment is a nullity, and that no title passes by the sale. *L'Engle* v. *Railroad Co.*, 21 Florida, 353; *L'Engle* v. *Wilson*, 21 Florida, 461. In the latter of these cases the assessment was made to the "estate of Parkhurst," and it was held that it and the sale based thereon were void. The court was urged to hold that the provisions of the statute in this respect were directory, but it declined to so hold, and ruled that they were imperative. In the former of the cases the assessment was in the name of W. L. Seymour, who claimed title under a foreclosure sale, but as it appeared that such foreclosure sale had passed no title, it was ruled that both assessment and sale were worthless. In its opinion the court said: "The tax is a lien on the land only when legally assessed. This lien attaches and has relation to the time at which the assessment was made. *Spratt* v. *Price*, 18 Florida, 289. We hold that a valid assessment of the land in accordance with the laws regulating assessments, c. 3099, Laws of Florida, acts of 1879, (and the law in this respect was similar to that of 1869,) is necessary and indispensable to make good the title of a purchaser at a tax sale; without such assessment no lien attaches to the land. An assessment, therefore, of lands to a person other than the owner, such person not being the occupant thereof, is not a valid assessment, and the purchaser at a tax sale based on such assessment takes no title."

So it appears that this land was not assessed to the owner or occupant, or to an unknown owner. It was not assessed by any official or accurate description. Within the decisions, therefore, of the Supreme Court of Florida the sale and deed were nullities, and beyond the protecting influence of the limitation statute.

The judgment was right, and it is

*Affirmed.*