(No. 2561.    Nov. 17, 1921.)

# SHACKELFORD V. McGLASHAN.

## SYLLABUS BY THE COURT.

Payment in good faith of taxes, although the assessment on which the payment is made erroneously describes the land intended to be assessed, is a defense against a sale and tax deed based upon a second assessment of the same land with a proper description.

Appeal from District Court, Bernalillo County; Hickey, Judge.

Action by W. H. Shackleford against A. E. McGlashan and another to cancel a tax deed and subsequent conveyance based on it. Demurrer to complaint sustained, and the plaintiff appeals. Reversed and remanded.

M. J. Helmick, of Albuquerque, for appellant.
George S. Downer and Simms & Botts, all of Albuquerque, for appellees.

## OPINION OF THE COURT.

DAVIS, J. This is a proceeding to cancel a tax deed and subsequent conveyances based upon it. It was decided by the trial court upon a demurrer alleging that the complaint did not state facts sufficient to constitute a cause of action, this demurrer being sustained. The facts are therefore admitted, and we state them from the complaint. On January 1, 1908, John Schroeder was the owner of 160 acres of land described as the S. W. ¼, S. 17, Tp. 9 N., R. 3 E., N. M. P. M., the land being located in Bernalillo county. This was the only 160-acre tract which he owned at that time. For the year 1908 Schroeder made a return for taxation purposes in Bernalillo county in which he included this 160 acres of land, but through inadvertence, error, and mistake he incorrectly described the land, the descrip-

tion set out in his tax schedule, literally read, being as follows:

| | Sec. | Tp. | tp. 7<br>Range | No. Acres |
|---|---|---|---|---|
| Precinct N. 1 | SW¼ | 17 | 5E | 160 |

This description was intended by Schroeder to identify and describe the 160 acres which he owned and was a bona fide attempt on his part to comply with the law.

The assessor in making up the rolls for the year 1908 did not copy exactly the return by Schroeder, but entered an assessment against him for the "SW¼, Sec. ——, Tp. 17, R. 5 E." Under this assessment Schroeder paid the taxes levied, intending thereby to pay the taxes upon the 160 acres of land which he owned, and this payment was accepted by the treasurer of Bernalillo county.

The land described in this assessment would be located in Sandoval county, and not in Bernalillo county, in which the assessment was made.

For the year 1908 the assessor made an additional assessment against "unknown owners," and there correctly described and assessed the lands owned by Schroeder as the "S. W. ¼, Sec. 17, Tp. 9, R. 3 E." Schroeder had no actual notice or knowledge of this assessment.

After Schroeder had paid the taxes under the assessment above set out, containing the incorrect description of his lands, the land was sold under the assessment to "unknown owners," and such proceedings were had that the tax title thus instituted became vested in the defendant A. E. McGlashan under a tax deed from the county. Later McGlashan and his wife conveyed the land by warranty deed to D. V. Wardall, who, with his wife, and likewise by warranty deed, conveyed the premises to J. J. Weisendanger, one of the appellees here. The as-

sessment to "unknown owners," the sale made under it to McGlashan, and the subsequent conveyances to Weisendanger all appear to be regular.

The tax sale was made during the year 1909, and is therefore governed by the provisions of section 25, c. 22, Laws 1899, which has frequently been before this court, the latest case being Chisholm v. Bujac, 27 N. M. 375 202 Pac. 126, decided at this term. This section expressly permits a tax sale made under that law to be attacked on the ground that the tax had been paid before the sale. In this respect it is merely declaratory of the rule which would exist without it. Non-payment of the tax is an essential foundation for every tax sale.

The question in this case is whether payment of the tax has in fact been shown, or, in other words, whether payment under this assessment which improperly described the land was good payment on the land he owned. It is conceded that appellant intended by this payment to pay the tax on his land and believed that he was doing so. Since the treasurer of the county accepted the money, it must be assumed that he understood it was payment on the same land, for he certainly would not knowingly accept the payment of taxes upon land not within his county. We have, therefore, a case where the owner has paid money to the county as taxes on a certain piece of land, and the county has accepted it as payment on that land, although in fact the land was not properly described on the tax roll and can only be identified by proof of circumstances wholly apart from the roll itself.

The assessment under which this tax was paid was not a valid one. It would not have supported the tax sale based upon it. On the record presented to us the assessment to "unknown owners" was a valid assessment, and the tax sale based upon it was regular on its face. The conclusion that this as-

sessment was valid necessarily follows from the decision of this court in Knight v. Fairless, 23 N. M. 479, 169 Pac. 312, in which this court held that an assessment of a specific piece of property to "unknown owners" could not be attacked by proof that the owner had attempted to include it in another assessment which did not describe it. We see nothing in the present record to differentiate that case from this one in that regard. But Knight v. Fairless did not involve the question of the payment of the tax. Here we are determining whether the tax was in fact paid, not primarily whether the assessment to "unknown owners" was good, and upon that point the former case is not authority.

We are not presented with the issue as to whether payment may be shown to avoid a tax sale based upon a record which incorrectly shows the tax unpaid, nor as to whether payment under one assessment, valid on its face, will avoid a sale under another equally regular, a question which arises in the ordinary case of double assessment. The authorities on such questions are uniform to the effect that payment in fact may be shown, and there would seem to be little chance for argument to the contrary. Here the question is somewhat different. We are determining whether payment under an assessment, invalid because it fails to describe the land sufficiently for identification, is good payment on the land intended to be assessed, so as to avoid a sale under another assessment with a proper description.

The primary purpose of every law for the enforcement of tax liens is to obtain payment of the tax. The end desired is the obtaining of the funds necessary for governmental purposes. If that payment has been obtained, the primary purpose of the law has been accomplished, and this is true whether or not payment is made with technical accuracy. While the law provides for a tax sale and allows a

purchaser at such sale to acquire title, divesting the former owner, that is but a method by which the county obtains its funds. The owner of the land having failed to pay, the county obtains its money from another. Under our statutes the purchaser at such a sale is amply protected. If the sale is invalid for the reason that no tax is in fact due, he recovers back from the county the amount which he paid to it. If his sale is valid, he obtains under it property usually worth many times the amount which he pays. He has all to gain and nothing to lose. The remedy as against the owner of the land is a harsh one in any event, and to hold that, where he has in good faith attempted and intended to return his land and to pay the taxes upon it, he must nevertheless lose it because of a failure to obey the provision of law which says that his assessment must properly describe the land, is to lay down too severe a rule. While it is true that the result would come from his own fault, the forfeiture of his property would be punishment far greater than the offense.

It being admitted in this case that Schroeder acted in good faith, intended to return his land, intended to pay the taxes upon it, and believed that he had done so, and that the county authorities accepted the payment with the same understanding, we hold that it was good payment in fact upon the 160 acres of land which he then owned, and that this payment was a bar to any sale under the second assessment to "unknown owners" may be shown in avoidance of it, and when so shown defeats it.

While cases presenting this exact question are few, we are not without authority for this decision. In Kellogg v. McFatter, 111 La. 1037, 36 South. 112, the facts were that Kellogg was the owner of 60 acres of land in the N. W. 1/4 of section 20. For the year 1897 there was an attempt to assess this land, but it was described as "lying in the N. E. 1/4" of

that section instead of the N. W. 1/4. Another as-
sessment was made to A. E. Minor of a portion of
the N. W. 1/4 of section 20, which included the Kel-
logg land, and under that assessment the land was
sold for taxes. Before this sale Kellogg had paid
the taxes under the assessment containing the er-
roneous description. The court held that the pay-
ment by Kellogg on his 60 acres of land was a good
payment thereon, although the description of the
land on the roll was erroneously given and further
stated:

"A. E. Minor, having no interest in the matter, and being,
besides, an absentee, made no opposition to this assessment;
and Kellogg, having paid his own taxes in full for that year,
rightfully considered that he was no longer concerned in the
matter of tax sales for the taxes of that year. The attempt
of the tax collector to collect taxes erroneously supposed to
be due on that property and by A. E. Minor was utterly
without justification, and any adjudication made under such
circumstances was absolutely null and void."

In Meller v. Hodsdon, 33 Minn. 366, 23 N. W. 543,
the facts were that Hodsdon was the owner of cer-
tain land in what was known as "lot 2." The lot
contained about 55 acres. The land was assessed to
him as the west 30 acres of lot 2, and he paid the
taxes so assessed and listed in his name. This was
not a good description of his land and did not cover
all that he owned. An additional assessment was
made to "unknown owners," the land being described
as "that part of lot 2, except west 30 acres and
southeast 10 acres," and under this description a tax
sale was made. This tax sale was attacked on the
ground that the taxes had been paid under the in-
correct assessment. The court found that it was
shown by the evidence of the assessor that he in fact
valued and assessed the defendant's land in lot 2 in
connection with the rest of his farm under the first
description, so that an assessment and valuation of
the entire lot was in fact made, and then, held:

"It is not necessary to consider whether the descripton
would be sufficient to support a tax title as against the

owner; but, upon the issue of payment by him of the taxes, under the assessment originally made, we see no reason why the facts we have recited were not proper to be shown in evidence, and upon them we think the finding warranted that the taxes lawfully levied upon defendant's land in lot 2 for the years in question were actually paid by him."

In the case of Bender v. Bailey, 138 La. 433, 70 South. 425, it appears that an assessment was made for the year 1904 in the name of Gus Bender to the "south half of south half of section 17, township 22, range 15," and under this assessment the property was sold. For the same year there was assessed to L. A. Thomason land as follows: "Number of acres; 160, $200." This assessment contained no further description of the land. Thomason paid the taxes under this assessment and proved that the property on which he intended to pay was the same as that assessed to Gus Bender; Thomason not being the owner of any other 160 acres of land. There was no dispute as to the identity of the property, as there is none in the present case. The court said:

"It is quite clear from the evidence of this last witness that L. A. Thomason was the owner of the 160 acres in question; that he was not the owner of any other large body of land in Caddo parish in the year 1904 that the assessment of the property to him and the payment of the taxes thereon relieved the property from the assessment and taxes in the name of Gus Bender for the same property, for the same year; that the tax sale was null; that the property belongs to plaintiffs."

In Lewis v. Monson, 151 U. S. 545, 14 Sup. Ct. 424, 38 L. Ed. 265, certain land was originally described as lot 6 in a designated section, and under this assessment the owner paid the tax. By a later map, which was effective at the time of the assessment, not all of the land was included in lot 6, but a part of it was within lot 7. An assessment was made against lot 7, and, the tax not being paid under this assessment, the lot was sold. The question was as to whether the owner might invalidate this tax sale by showing that the payment which he made upon lot 6 was intended to cover all of the land.

After quoting from the opinion of the Mississippi court, the Supreme Court of the United States says:

"That the owner was not bound, as matter of law, to take notice of the new map is shown by that decision, and if he was not bound to know, and did not in fact know, and paid under a mistake, relying upon the ancient descriptions and the old map, and intended in good faith to pay all his taxes, then clearly, within the scope of that decision, the sale was invalid, and the deed fails."

The decision in this case cannot be influenced by the fact that the present claimant under the tax title is not the original purchaser, but a subsequent grantee from him. If the tax title in the hands of the first purchaser is invalid, it gains no validity by transfer to another. The stream of title rises no higher than its source. The purchaser of the tax title took with the knowledge that it might be defeated by proof of payment of the tax, and his grantee is in no better position. The question of notice and of the recording acts is not involved in this case.

For the error of the trial court in sustaining this demurrer, the judgment is reversed and the cause remanded; and it is so ordered.

RAYNOLDS, C. J., and PARKER, J., concur.