BAMONTE, Plaintiff, *v.* OCEAN BEACH-FIRE ISLAND COMPANY and Others, Defendants.

Supreme Court, Suffolk County, September 14, 1925.

Taxation — assessment — tax title — defendants hold tax title to east one-half of lot — assessment of one-half of east half against another party is invalid under Tax Law, § 55-a — payment of tax under that assessment did not make tax sale of east one-half invalid — publication of notice of tax sale under Tax Law, § 151, once in each week for six weeks is sufficient — sale held on Monday following week of last publication is valid.

The plaintiff contends that the tax title held by the defendants to the east half of a lot of land is invalid on the theory that the taxes on a portion of the east half have been paid under an assessment against " $\frac{1}{2}$ of easterly half " of said lot. That assessment was not in the name of the then owner of the east half of said lot. Notwithstanding the taxes were paid on that assessment the tax sale of the east half of the lot was not invalid for the assessment against " $\frac{1}{2}$ of easterly half " of lot was invalid under section 55-a of the Tax Law inasmuch as it did not describe the parcel assessed in such a manner that the parcel might be identified. Under that assessment it is impossible to determine which half of the easterly half is assessed.

The tax sale which took place on a Monday following the last publication of notice of sale in the preceding week, which notice had been published once each week for six weeks, was valid notwithstanding forty-two days had not elapsed since the first publication of notice. Under section 151 of the Tax Law a notice of sale must be published once in each week, that is between Saturday midnight and the following Saturday midnight, for six successive weeks, and a proper construction of that section is that the sale may take place on the first day of the week following the sixth week of publication.

ACTION to determine the validity of a tax sale.

——————— ———————, for the plaintiff.

——————— ———————, for the defendants.

Lazansky, J. On a duly filed map, known as the " Sammis map," of property at Great South Beach, in the towns of Brookhaven and Islip, there is a plot of land in the town of Islip extending from bay to ocean, being 800 feet in width, containing forty acres, and designated on the map as " No. 4." Prior to 1916 the title to the premises, easterly half of lot 4, was in one Van Zandt. In May, 1916, because of non-payment of taxes, the easterly half of this lot was conveyed by the county treasurer to one Wiltsie, who conveyed to plaintiff in 1916. In the assessment roll of the town of Islip for the year 1918 appear the following entries:

" Name of owner, last owner or reputed owner — Caldwell, Francis; name of locality — beach property; described by adjacent land, street or road — $\frac{1}{2}$ of easterly half lot 4, 200 feet of Arthur purchase; acres — 10; full value of such real property — $1,200; state, county, town, and general highway taxes — $8.40; highway taxes, item 1 — $2.88; returned school tax — $4.56; total taxes — $15.84.

" Name of owner, last owner or reputed owner — Van Zandt, Harriet; name of locality — beach property; described by adjacent land, street or road — E. $\frac{1}{2}$ of lot 4, Sammis Map, 400 feet wide; acres — 20; full value of such real property — $2,400; state, county, town and general highway taxes — $16.80; highway taxes, item 1 — $5.76; returned school tax $9.12; total taxes — $31.68."

Similar items are contained in the assessment roll for 1919. It is conceded that the characterization in each of the first items for 1918 and 1919 (" Arthur Purchase ") refers to this lot No. 4. The taxes levied under the first items for 1918 and 1919 were paid. The taxes levied under the second item in each of those years were not paid, and the property was sold by the county treasurer. Defendant Ocean Beach-Fire Island Company received the tax title.

Plaintiff claims that the county treasurer's deeds on the sales for non-payment of taxes of the second items for each year conveyed no title, because there was a double assessment, and the taxes on part of the property were paid under one of the assessments. It is also claimed by plaintiff that there was a failure to comply with the statutory requirements in connection with notices of the sales, and for that reason the sales were void. It will be assumed that, if taxes levied on a part of the easterly half of lot No. 4 were paid under an assessment lawfully made, a sale made for non-payment of taxes on the easterly half of lot No. 4 would be void.

It is necessary, therefore, to determine if the two items of taxes

of each year which were paid were levied under a valid assessment. Section 21 of the Tax Law (added by Laws of 1914, chap. 277, as amd. by Laws of 1916, chap. 323) provides:

" § 21. Preparation of Assessment Roll. 1. The assessors shall prepare an assessment-roll or rolls, the form of which shall be prescribed or approved by the tax commission, so classified and arranged with respect to number of parts and number of columns in each part and with such entries and descriptions as shall be sufficient to identify each separately assessed parcel or portion of real estate with the approximate quantity of the square feet, square rods or acres contained in such parcel or portion or a statement of the linear dimensions thereof. * * * "

Section 55-a of the Tax Law (as renumbered from section 63 and amd. by Laws of 1916, chap. 323) provides:

" § 55-a. Errors in Assessment-Rolls. An error in the description of a parcel or portion of real property shall not invalidate the assessment against such parcel or portion, if such description is sufficiently accurate to identify the parcel or portion. The entry of the name of the owner * * * or reputed owner of a separate parcel or portion of real property shall not be regarded as part of such assessment, but merely as an aid to identify such parcel upon the roll."

The important factor, therefore, is to have a description sufficiently accurate to identify the parcel or portion. The assessment was on the " easterly half of lot No. 4." Although the number of acres is correctly stated it is impossible to determine which half of the easterly half of lot No. 4 has been assessed. Is it the westerly or the easterly half of the easterly half? No one can tell. If this tax had been unpaid, and the property was offered for sale because of such non-payment of taxes, which half of the easterly half would be sold? There is nothing in the record, which, of course, controls, to show what property has been assessed. The name in the assessment roll, to wit, Francis Caldwell, does not help in identifying the parcel. There is no proof in the case that Caldwell owned any part of the easterly half. Undoubtedly there was a mistake made in this entry, and it may be proper to state, purely as a matter of interest, that Caldwell owned one-half of the easterly half of the *westerly* half of lot No. 4, and the words " of the westerly half of," after the words " one-half of the easterly half " were omitted from the assessment. This question of the necessity of a description sufficiently accurate to identify the property assessed is discussed at length in *McInnis* v. *City of New Rochelle* (99 Misc. 388), per J. ADDISON YOUNG, J., where numerous authorities are considered. (See, also, *McCoun* v. *Pierpont*, 232 N. Y. 66.)

*Shackelford* v. *McGlashan* (27 N. M. 454; 202 Pac. 690) is not in point. That case holds that, if an owner pays a tax believing in good faith that it is levied under an assessment of his land, though the land is not accurately described in the assessment, the payment discharges from the tax the land intended to be assessed. Here there is no proof that the owner of the easterly half paid these taxes. On the contrary, it is conceded they were paid by a stranger. That case would be authority for the proposition that Caldwell, who paid this tax, could justly assert the claim that the tax had been paid on the easterly half of the westerly half of lot No. 4 owned by him. My conclusion is that this assessment was invalid, and, therefore, the tax levied under it was void and a payment thereof of no effect.

The other question is as to the sufficiency of the notices of publication. Section 151 of the Tax Law (as amd. by Laws of 1918, chap. 159),* in so far as applicable, provides:

" Sec. 151. Advertisement and Sale. The county treasurer shall immediately after the expiration of such six months cause to be published at least once in each week for six weeks, in two newspapers designated for the publication of the session laws, a list of real estate so liable to be sold, together with a notice that such real estate will, on a day at the expiration of said six weeks specified in such notice, and the succeeding days, be sold at public auction.    *    *    * "

The publications for the non-payment of the 1918 taxes were as follows: In one newspaper October 9, October 16, October 23, October 30, November 6 and November 13, 1919, each of said days being a Thursday; in the other newspaper October eleventh, October eighteenth, October twenty-fifth, November first, November eighth and November fifteenth, each of said days being a Saturday. The sale was held Monday, November seventeenth. It thus appears that between the first publication in one newspaper and the date of sale thirty-nine days elapsed, and in the other thirty-seven days. The publications for the non-payment of the 1919 taxes were made in two newspapers, each beginning Friday, October 22, 1920, and continued on the following Fridays, October twenty-ninth, November fifth, November twelfth, November nineteenth and November twenty-sixth. The sale was on Monday, November twenty-ninth, being thirty-eight days from the first publication. The plaintiff claims that these sales were void, because forty-two days did not elapse between the first publication and the date of sale. He cites authorities which seem to support his contention.

* Since amended by Laws of 1926, chap. 283.— [Rep.

In considering this question, of course, the words of each statute must be carefully considered. The purpose to be served in one may not be present in another. A week is the time between midnight on Saturday and midnight on the succeeding Saturday. (*Ronkendorff* v. *Taylor's Lessee,* 4 Pet. 349; *Matter of Wright,* 224 N. Y. 293.) The term also applied to any period of seven successive days. (*Matter of Wright, supra.*) Taking either meaning of the word " week " as a basis, and without applying a judicial construction that six weeks mean forty-two days from the first publication to the date of sale (*City of Albany* v. *Goodman,* 203 App. Div. 530), and without considering the effect of the words in the statute, " on a day at the expiration of said six weeks specified in such notice," there could be a publication in each week for six weeks and the sale take place in less than forty-two days. It is, however, urged that the words " in each week for six weeks " mean that forty-two days must elapse between the first publication and sale. *Matter of Wright* (224 N. Y. 293); *Market Nat. Bank of New York* v. *Pacific Nat. Bank of Boston* (89 id. 397, 398) and *City of Albany* v. *Goodman* (203 App. Div. 530) are cited as authorities.

None of the statutes considered in those cases contain the words " on a day at the expiration of said six weeks specified in such notice." The first two have to do with the publication of process in court proceedings, and different considerations are applicable thereto. If it was intended, by the use of the words " at least once in each week for six weeks," to mean that the publication shall extend over a period of forty-two days (see, to the contrary, *Valentine* v. *McCue,* 26 Hun, 456; *McKee* v. *Kerr,* 192 Penn. St. 164; *Dexter* v. *Shepard,* 117 Mass. 480), then there would have been no necessity of adding the words " on a day at the expiration of said six weeks specified in such notice." Whether a week means from Saturday midnight to Saturday midnight, or any successive seven days, if forty-two days had to elapse between the date of the first publication and the day of sale, it would be at the expiration of six weeks in either event. So the use of these words " on a day at the expiration of said six weeks specified in such notice " would have been entirely unnecessary.

The Legislature sought to prevent a sale on a day of the week in which the last publication was had, not intending to exclude as the meaning of a week the time from Saturday midnight to Saturday midnight. There may be forty-two days from the first publication to sale, but it is not essential. Under such a construction thirty-seven days, at least, would necessarily elapse between the first publication and the time of sale. The words " on a day at the

expiration of said six weeks specified in such notice " prevent the possible result outlined in *City of Albany* v. *Goodman* (203 App. Div. 530). Were those words used in the statute before the court in that case, sixteen days would be the minimum of time that could elapse from the day of the first publication to the day of sale. In *Matter of Wright* (*supra*) the result reached was influenced by the advisability of having a. uniform practice in the service of citations. At page 300 the court says: " Such a construction will make the minimum time for the publication of a citation uniform in all cases and prevent uncertainty and dispute as to the beginning and ending of the successive weeks and in the computation of the time provided by the statute."

This same reason also affected the determination in *Market Nat. Bank of New York* v. *Pacific Nat. Bank of Boston* (89 N. Y. 397, 398). See last paragraph of opinion. It seems to me that there is no necessity, in the sale of land for non-payment of taxes, for that uniformity of practice which should obtain in court proceedings. As long as the owner has due notice, the purpose of publication has been served. As pointed out, no less than thirty-seven days may elapse from the time of the first publication to the date of sale. This is ample. There is no practical necessity for the same number of days to elapse between publication and sale in all sales in the various counties of the State. It seems that the more accurate and general sense of the word " week " is the time from Saturday midnight to Saturday midnight. (38 Cyc. 314.) It may be inferred that was the view of Judge CHASE in *Matter of Wright* (*supra*), in the light of the citation from 27 Halsbury's Laws of England (p. 439). The use of the word in a sense of any period of seven days, according to the citation, is found in statutes expressly defining it. It is a statutory rather than a common use; secondary, and not primary. Unless, therefore, the Legislature has used language indicating an intent to apply the secondary meaning, or the purpose for which the act was passed requires it, there is no reason for applying that meaning. Neither the language of the statute nor the purpose thereof requires the use of that meaning.

My conclusion is that publication was in compliance with the statute. These are the only two questions submitted, and, therefore, there must be judgment for the defendants, who hold under the tax sales discussed. Submit proposed findings of fact and conclusion of law on two days' notice.