CARROLL, CHAS., Chief Judge.
Appellant seeks reversal of a final decree which dismissed its suit to quiet title and which granted affirmative relief of that character to the appellee.
There were two lots involved, described as Lots 29 and 30 in Block 91-B of a subdivision designated as “Thirteenth Addition to Hialeah.” The problem in the case resulted from the reference from time to time to certain plats which did not include or describe these lots. There were four plats involved, which we will refer to as A, B, C, and D.
Appellant claimed as mesne grantee from the State under the Murphy Act, Chapter 18296, Laws of Florida, 1937. A 1929 assessment, and a tax sale thereon in 1930, and a 1932 assessment and sale thereon in 1933, were required to be relied on as the basis for State title under the Murphy Act.
Appellee, who appears as the last grantee in the regular chain of title, contended in the trial court that the assessments were void; that the property was not subject to any outstanding tax delinquencies for which the State could have gained title under the Murphy Act; and that conveyance out of the State in 1944, and an attempted corrective deed made by the State in 1955 during the pendency of the suit, were ineffective to transfer any title or interest in the property.
The Murphy Act became a law on June 10, 1937. Section 9 of the act provides as follows:
“This Act shall remain in full force and effect for two years from the date same shall become a law and at expiration of such four year period, then the fee simple title to all lands, against which there remains outstanding tax certificates which on the date this Act becomes a law, or more than two years old, shall become absolutely vested in State of Florida, and every right, title *683 or interest of every nature or kind whatsoever of former owner of said property or anyone claiming by, through or under him, or anyone holding lien thereon shall cease, terminate and be at an end, and the State of Florida thereafter, through the Trustees of Internal Improvement Fund shall be authorized and empowered to sell the said lands to the highest and best bidder for cash at such time and after giving such notice and according to such rules and regulations as may be fixed and adopted from time to time by the said Trustees of the Internal Improvement Fund.” Chapter 18296, § 9, Laws of Florida, 1937.
 It becomes necessary to consider the circumstances relating to the tax sale certificates of 1930 and of 1933, to determine whether they were “outstanding tax certificates” on the effective date to cause the title to revert to the State under the Murphy Act. When the 1929 assessment was made, the property could have been described under plat A (Plat Book 28, page 70), but in making the assessment the property was described according to plat B (Plat Book 31, page 30). That plat did not contain a numbered block 91-B, and in its application to this property that plat created an ambiguity and uncertainty.
Vagueness, ambiguity and uncertainty in describing property assessed can make the assessment invalid. The description of lands on the assessment roll must be such as will warn the owner of the charge upon his land, and advise possible purchasers of what land is involved when there is a sale for delinquency. Miller v. Lindstrom, 45 Fla. 473, 33 So. 521; Porter v. City of Key West, 69 Fla. 357, 68 So. 175; Florida East Coast Fruit Land Co. v Mitchell, 80 Fla. 291, 85 So. 661.
On the tax sale in 1930 based on that 1929 assessment, the tax sale certificate was issued to the State. The law applicable at that time provided that where such a tax certificate was issued to the State the property should not be assessed in subsequent years while such certificate was outstanding, but only valuations in subsequent years should be entered on the tax roll and marked against such lands. See § 984, Comp.Gen.Laws of Fla., 1927, as follows :
“The tax assessors in making up their assessment rolls shall place thereon the land certified to them by the State Comptroller as having been sold to the State for taxes, and shall enter their valuations of the same on the rolls, and shall mark against such lands on their said rolls, the word State tax certificate. The amount of taxes on said lands shall not be extended on the roll, but when said lands are redeemed from the tax certificate or certificates under which they were sold, the person redeeming shall also pay the taxes for the years in which the said lands are marked as aforesaid, at the rate of taxation levied thereon in those years respectively, together with interest as now provided by law.”
Obviously in the belief that the 1929 assessments on these two lots, and the 1930 certificates based thereon were invalid because of such defective description, the 1930 tax sale certificates were abandoned and the property was reassessed in 1932, a procedure which according to section 984, Comp.Gen. Laws of Fla., 1927, would not have been necessary or proper if the 1930 tax certificates were valid and had continued outstanding.
The assessment made in 1932 was no more effective than the earlier one, because the assessor described the property according to plat C (Plat Book 20, page 37). That description was defective because plat C did not contain or show any lots numbered 29 and 30 in said block 91-B. The tax certificate issued to the State on a 1933 tax sale based thereon likewise was void.
Later in the year 1932, after the assessment of that year had been made describing the lots under plat C, a new plat *684 was recorded under which the lots could have been described correctly and sufficiently, being plat D (Plat Book 34, page 26). The conveyance out of the State in 1944, based on a supposed Murphy Act title in the State, did not use plat D of 1932, but was made according to plat C which did not show said numbered lots 29 and 30. The corrective deed from the State in 1955, using plat D, sufficiently described the property, but was ineffective because it relied, as did the earlier State conveyance of 1944, on the invalid assessments of 1929 and 1932 and certificates based thereon.
In the final decree covering 18 pages the chancellor reviewed the pleadings and evidence, and in the course of his decree determined the facts, including those which we have set out above. We quote a portion of the decree, dealing with matters which to this court seem particularly pertinent to the decision, as follows:
“The Tax Assessor at that time, J. N. Lummus, Jr., testified that in putting the property back on the current tax roll for 1932 he did so and could have done so legally only under the impression or understanding that there were no outstanding delinquent tax certificates. He testified that the changes on the tax roll for 1929 had certainly all been made eliminating Plat Book 31 at Page 30, at least prior to 1932. As to whether the original tax certificates above referred to as certificates numbers 5339 and 5340 had been actually cancelled and destroyed before the tax roll of 1932 was filed, he was- not clear, but it was apparent from his records at that time that there were no outstanding tax certificates which were recognized as valid and outstanding, otherwise he could not have put the property back on the active tax roll.
“Very briefly, the balance of the testimony showed that on April 4, 1932, by a plat filed April 5, 1932, the Curtiss-Bright Company after having numerous conferences with the Tax Assessor’s Office covering this and other property in Hialeah, filed a corrected map termed ‘Amended Plat of the Amended Plat of 13th Addition to Hialeah.’ (There was no reference to Section 1). This plat was duly and regularly filed and did correctly describe certain of the property as Lots 29 and 30 of Block 91B according to said Plat Book 34 at Page 26.
“However, as was developed in the testimony, that plat having been filed in 1932 after January first and even after April first, it was not and could not have been considered in making the current assessment for 1932. Therefore it appeared without dispute that the 1932 assessment again erroneously described the property as Lots 29 and 30 of Block 91B according to Plat Book 20 at Page 37, and since there was no such description, that assessment was void for uncertainty just as the original 1929 assessment was void for uncertainty with reference to Plat Book 20 at Page 37.
“From the evidence, the question therefore arose as to whether under these circumstances any tax certificate sale based upon the erroneous •assessment in 1929 and later corrected by the Tax Assessor’s Office itself, could have been the basis for a legal tax sale.
“This Court finds as a matter of fact that said tax certificate number 5339 recorded in Tax Sale Book 31 at Page 230 and tax sale certificate number 5340 recorded in Tax Sale Book 31 at Page 230, both for the year 1930, were either erroneously issued in accordance with Plat Book 31 at Page 30 or became amended prior to 1932 to contain only the description according to Plat Book 20 at Page 37. Whether those certificates were void at their inception because of the use of the improper plat or whether they became void upon amendment of the tax roll and subsequent cancellation prior to 1932, .-need *685 not be decided because the certificates had never passed into the hands of any third parties and the mistake had been recognized and corrected by the Tax Assessor who, so far as the owners of the fee simple title were concerned, had at least apparent authority to correct the tax roll and did so.
“When the Tax Assessor, after conference, as testified to by Mr. Lummus, then re-assessed the property on the current roll for 1932, insofar as the public was concerned or the owners of the fee simple title were concerned, those tax certificates had been eliminated except insofar as they might have referred to lots described as Lots 29 and 30 of Block 91B according to Plat Book 20 at Page 37. Admittedly those certificates would have been void.
In 1933 the Tax Collector again held a sale as of August 7, 1933 for unpaid State and County taxes for the year 1932, and there did appear to he a sale of certificate 26291 recorded in Tax Sale Book S1A, at Page 1106, for $1.93, the sale covering Lots 29 and 30, Block 91B 13th Addition to Hialeah, Plat Book 20, at Page 37.
“The plaintiff in open court has admitted that it could claim no title under the so-called Murphy Act under certificate number 26291 because that was admittedly a void assessment, but regardless of any admission of counsel for plaintiff, the Court finds that was a void assessment and the certificate was void from its inception.
“However, notwithstanding that that certificate was void, plaintiff contended that in 1937, the effective date of the Murphy Act, which was Section 9 of Chapter 18296, Laws of Florida 1937, the original certificates for the erroneous sale of 1930 were still in existence, to wit, certificate number 5339 covering Lot 29 and 5340 covering Lot 30. The Court finds as a matter of fact that said certificates were either void from the inception or had been can-celled and could not have been made the proper basis of a certificate under the said Murphy Act so as to affect the title to Lots 29 and 30 of Block 91B according to Plat Book 34 at Page 26 of the Public Records of Dade County, Florida.”
Under the facts and circumstances disclosed by the record and as stated and found in the final decree, we hold that the learned chancellor was correct in concluding that the assessments and tax certificates involved were void, and that title of the defendant-appellee prevailed.
Affirmed.
HORTON and PEARSON, JJ., concur.