PIERCE, Judge.
This is an appeal by the plaintiffs below, Hazel Addison and Henry Futch, from a final judgment rendered by the Lee County Circuit Court in favor of the defendant Elena Duke Benedict, and the other defendants who claim as successors in interest of Harold M. Bixby, deceased, (hereinafter referred as the Bixbys), in a suit to quiet title.
Addison and Futch filed their amended complaint in which they alleged that they are the owners of:
The North 150 feet of the South one-half of Gov’t. Lot 3, Section 35, Township 45 South, Range 21 East,
and
All of the South one-half of Gov’t Lot 3, Section 35, Township 45 South, Range 21 East, excepting the North 150 feet thereof, and the North one-half of Gov’t Lot 4, Section 35, Township 45 South, Range 21 East;
that they obtained title from Wm. Franklin Futch who purchased the land on May 16, 1941, from the Trustees of the Internal Improvement Fund at a Murphy Tax Sale; and that Benedict and the Bixbys assert claims to part of the above described property. They alleged adverse possession by their predecessor in title of the disputed strips of land claimed by the defendants; and prayed that plaintiffs’ title be quieted against the claims of defendants. Benedict filed her answer and counterclaim and the other defendants filed their answers and affirmative defenses. Addison and Futch filed their answer to Benedict’s counterclaim.
It appears from the record that prior to 1941 Government Lots 3 and 4 were irregular lots on Buck Key in Lee County and were owned by three separate owners, (1) Benedict’s predecessor in title, (2) one Tusch, and (3) the deceased Bixby’s predecessor in title; each having acquired title by a metes and bounds description, based upon the prior established line and sustained by monuments reflected in field notes- of prior surveyors. None of these owners returned their land to the Tax Assessor for ad valorem taxation, such failure being the then rule rather than the exception in Lee County.
Beginning prior to 1924 the Tax Assessor designated these three parcels on the tax roll as (1) Ni/2 Lot 3, (2) Sj4 Lot 3 and N% Lot 4, and (3) S% Lot 4, which abbreviated form was locally customary in describing lands on the tax roll. Taxes were paid on the Benedict and Bixby parcels regularly. Tusch did not pay the taxes assessed to him on the 1925 roll and a tax certificate was sold in 1926. Another tax certificate was issued against the Tusch land in 1933, and Wm. Franklin Futch, one of plaintiffs’ ancestors, obtained a Murphy Act deed in 1941 describing the land by the abbreviated tax roll description — SYz of Lot 3 and N% of Lot 4 — which overlaps the northern portion of the Bixby property and the southern portion of the Benedict property. In 1955 Wm. Franklin Futch deeded the north 150 feet of the SYz of Government Lot 3 to his granddaughter, Hazel Addison, and in 1959 he deeded the remainder of the property to his son, Henry Futch. They are plaintiffs in the instant suit.
Carl E. Johnson, a highly respected Registered Land Surveyor, in 1966 made the only survey that ever attempted to mark the boundaries of the South half of Lot 3 and the North half of Lot 4. The original surveyor did not run the government lot line between Government Lots 3 and 4. Johnson testified that the distance from the township and section line to the north end of the island was actually 2814 feet rather than 3465 feet as shown by the original survey. He testified that he would *337 set the government lot lines by proportional measurement, based upon the actual length, giving each government lot that proportion of the actual length that the length of its east line, as shown on the original survey, bore to the total length of the east line as shown on the original survey; and that he would stake the half lot lines at half of the proportional length of the east line of the lots.
At the conclusion of the trial the Court entered final judgment, finding inter alia that the apportionment of lands by linear measurement was not correct, and if the lands were to be apportioned they would have been apportioned by the Court by acreage measurement; that the plaintiffs failed to establish title by adverse possession; that the metes and bounds descriptions took precedence over the tax deed granted to plaintiffs’ predecessor in title; that the failure of the defendants or their predecessors to return the property for taxes did not relieve the tax assessor of his obligation to assess the properties upon the tax roll by proper legal description; and that the title acquired by plaintiffs pursuant to the tax deed vested in them only such title and ownership as that owned by Tusch.
The Court ordered and adjudged that Benedict and the Bixbys were the owners in fee simple of the properties described in their respective deeds; that the titles to their said lands were quieted and established; that any right, title or interest of the plaintiffs in lands adjudged to be owned by the defendants were cancelled and annulled; and the plaintiffs were enjoined from asserting or attempting to assert any right or title to said lands or any part thereof.
Addison and Futch first contend that a Murphy tax deed is not invalid because of assessment, where a portion of the land owned by one person is included in a description of a parcel assessed to a contiguous landowner, but not in the assessment to the real owner, neither party having returned the property for taxation. It must be noted, however, that the lower Court did not hold that the tax deed was invalid, but that the tax deed vested in Addison and Futch only such title and ownership as that owned by the former owner, Tusch.
Section 718; Revised General Statutes of Florida 1920, (now included in the compilations as F.S. § 193.20 F.S.A.) which was in effect at the time the Tax Assessor designated the parcels involved by the abbreviated form, provides in part:
“ * * * the county assessor of taxes may correct any errors in the description so returned, and if the owner or agent fails to make such returns, the county assessor of taxes shall assess all lands not returned, according to the government survey, and shall assess in one assessment all the lands in a section belonging to the same owner, or assessed, as ‘unknown/ * * * Provided, That when private surveys of land or descriptions by metes and bounds have taken the place of government surveys, and the land is known, designated and described only by such private surveys or metes and bounds, the description in the assessment shall be made in accordance with such surveys or descriptions as recorded in the office of the clerk of the circuit court, or by reference to deed of record, giving the book and page as appears in the office of the clerk of the circuit court. * * * ”
As stated above, Benedict, Tusch and Bixby acquired their titles by metes and bounds. The lot lines and the half lot lines of Government Lots 3 and 4 had not been marked by a government survey. In fact, the only attempt to mark these lines was made in 1966 by Mr. Johnson who testified that he would set the government lot lines by proportional measurement, and that he would stake the half lot lines at half of the proportional length of the lots. There is no indication in the record that this method of marking the lines had been adopted. Therefore, there was no way for *338 the tax assessor or the Benedicts and Bix-bys or their predecessors in title to know where the half lot lines would fall on the ground.
The lower Court was eminently correct in holding that the failure of Bene-dicts and the Bixbys or their predecessors in title to return their property for taxes does not relieve the tax assessor of his obligation to assess the properties upon the tax roll by proper legal description in compliance with the statute. Crawford v. Rehwinkel, 1935, 121 Fla. 449, 163 So. 851; Crawford v. Rehwinkel, 1937, 127 Fla. 871, 174 So. 455.
Abbreviations may be used so long as they are not misleading and indicate the thing intended with certainty, Crawford v. Rehwinkel, 1935, 121 Fla. 449, 163 So. 851, or where they are intelligible and leave no uncertainty as to the property upon which the imposition is intended to- be placed, 1 A.L.R. 1228-1234. In Inter-City Security Co. v. Barbee, 1932, 106 Fla. 671, 143 So. 791, our Supreme Court said:
“All that the tax laws require is that an assessment roll shall show such description of the taxed property as will make it possible for a surveyor, with the aid of the whole tax roll and the information conveyed thereby, to identify the property with reasonable accuracy.” (Emphasis supplied)
See Jarrell v. McRainey, 1913, 65 Fla. 141, 61 So. 240; Florida East Coast Fruit Land Co. v. Mitchell, 1920, 80 Fla. 291, 85 So. 661; Dixon v. City of Cocoa, 1932, 106 Fla. 855, 143 So. 748; Crawford v. Rehwinkel, Fla.1935, 163 So. 851, supra; Crawford v. Rehwinkel, Fla. 1937, 174 So. 455, supra; H & H Investment Co. v. Goldberg, Fla.App.1958, 103 So.2d 682; Allison v. Rogero, Fla.App. 1959, 112 So.2d 578; Holmes v. Kiser, Fla.App.1962, 138 So.2d 782 ; 31 Fla.Jur., Taxation §§ 243, 244. Compare Mouton v. Southern Saw Mill Co., 1916, 138 La. 813, 70 So. 813, in which case the Supreme Court of Louisiana held a tax deed void for want of a description by which the property could be identified where the tax deed described land, of which the land in dispute was apparently a part, as being the North part of Section 79, it appearing that the Section in question had never been divided into a north part and a south part.
It is clear, as to the lands here involved, that the descriptions of the properties on the tax roll did not indicate with certainty the properties intended to be assessed. The government lots were irregular and the half lot lines had never been marked by a government survey. A surveyor could not with certainty locate the land intended to be assessed from the description used in the tax roll. Crawford v. Rehwinkel, supra.
Addison and Futch cite Wells v. Thomas, Fla.1954, 78 So.2d 378, to support their contention that attacks made by former owners on Murphy tax deeds after one year are limited to jurisdictional defects. See F.S. § 192.48(1) F.S.A. They also cite Sovereign Finance Co. v. Beach, Fla.1949, 38 So.2d 831, which states the rule that a tax deed issued in full compliance with requirements of the statute will not be held invalid because of an unintentional error in the making of the tax roll. But we are not here concerned with whether or not the tax deed to the property intended to be assessed, owned by the tax debtor Tusch, was valid or protected by the limitation provision of the statute, where the description in the tax assessment or deed did not describe the property purported to have been sold for taxes, or the description thereof was so vague, uncertain, or erroneous that the property in question could not be identified. See 133 A.L.R. 570.
The real question for decision is whether a landowner may lose title to a portion of his property by reason of the tax assessor’s failure to assess such property by a proper legal description. The general rule is that when the owner of *339 property pays taxes believing in good faith that it is assessed against his land, though that land is not accurately described in the assessment, the payment discharges from the tax the land in exoneration of which it is intended. Euse v. Gibbs, Fla.1951, 49 So.2d 843; Shackleford v. McGlashan, 1921, 27 N.M. 454, 202 P. 690, 23 A.L.R. 75; Kellogg v. McFatter, 1904, 111 La. 1037, 36 So. 112; Conover v. Allison, La.App.1938, 178 So. 756; Meller v. Hodsdon, 1885, 33 Minn. 366, 23 N.W. 543; Lewis v. Monson, 151 U.S. 545, 14 S.Ct. 424, 38 L.Ed. 265; Trujillo v. Montano, 1958, 64 N.M. 259, 327 P.2d 326; Smith v. Henley, 1958, 53 Wash.2d 71, 330 P.2d 712; 23 A.L.R. 79, and cases collected there.
As was stated in Bird v. Benlisa (1892) 142 U.S. 664, 12 S.Ct. 323, 35 L.Ed. 1151, “[t]he owner, as the Florida supreme court has repeatedly held, has a right to rely upon the assessment roll.”
It is not disputed that Benedict and Bixby and their predecessors in title paid their taxes on the property as assessed, believing in good faith that they were paying them on their property, and that there was no way for them to know where the half lots would fall on the ground. During the tax sale procedure the land being sold for non-payment of taxes was identified as that of Tusch. The notice of publication in the newspaper, the 1926 tax sale books, and the record in the office of the clerk of the circuit court relating to the Murphy Act Sale in 1941 contained Tusch’s name. There is no evidence in the record that the predecessors in title of Benedict and the Bixbys received any notice of a tax sale proceeding.
The time limitation of F.S. § 192.-48, F.S.A. is not applicable because the properties owned by Benedict and the Bix-bys including the disputed strips, in legal effect were not covered by the descriptions in the tax deed, and the taxes on these properties had been paid. Euse v. Gibbs, supra; Mid-State Homes, Inc. v. Nassau County, Fla.App.1967, 198 So.2d 382.
We find no error in the holding of the lower Court that the title acquired by Addison and Futch pursuant to the tax deed vested in them only such title and ownership as that owned by Tusch.
Addison and Futch cite Stuart v. Stephanus, 1927, 94 Fla. 1087, 114 So. 767, as authority for the proposition that a tax title in Florida is not dependent upon or connected with the former title. Our independent research has revealed no Florida cases or decision from other Courts on point with the case sub judice. The reported cases deal with the former title of the tax debtor, or the person who was last seized of the fee, and have no relevancy to the title to property erroneously included in the tax assessment roll. See Dean v. Kane, 1932, 106 Fla. 814, 143 So. 656; Hecht v. Wilson, 1932, 107 Fla. 421, 144 So. 886, 145 So. 250; Torreyson v. Dutton, 1939, 137 Fla. 683, 188 So. 805, 190 So. 430; Daniell v. Sherrill, Fla.1950, 48 So. 2d 736 ; 23 A.L.R.2d 1410; 31 Fla.Jur., Taxation § 438; 51 Am.Jur., Taxation § 1078.
Addison and Futch next claim title to the disputed land by adverse possession. The record shows that Wm. Franklin Futch, plaintiffs’ ancestor, after he had obtained the tax deed in 1941, built a house near the center of the Tusch property and lived on the island until 1958, during which time he maintained his house and other buildings, kept live stock which were permitted to run all over the island, cultivated a garden in the vicinity of the house which was fenced, cut posts and gathered fuel wood, but did not put a fence on the boundaries of his property. The aerial photographs admitted into evidence, which were taken in 1944, 1953 and 1958, showed clearing and cultivation of the Benedict parcel down to the south boundary of her metes and bounds description; clearing and cultivation of the Bixby parcel up to the *340 north boundary of the Bixby metes and bounds description; and clearing and cultivation of the Tusch parcel within a limited area approximately in the center of that parcel. Although the aerial photographs taken in 1953 and 1958 showed the occupation gradually diminished and the areas overgrown, the occupational lines are still apparent on the 1958 photograph.
The evidence of the “residential” use of the property clearly did not encompass lands covered by the Benedict or Bixby metes and bounds descriptions, or the disputed parcels which are the subject of this suit. The areas cultivated by Futch were well within the confines of the Tusch ownership. The aerial photographs demonstrated that the disputed parcels were occupied not by the plaintiffs, but by the Benedicts and Bixbys. The Chancellor found from the evidence before him that the plaintiffs had failed to establish their claim of title to the subject property by adverse possession. We conclude that the evidence amply supports his finding.
It is not necessary to consider appellants’ third point. The trial Judge found that “the apportionment of lands by linear measurement is not correct, and if the lands were to be apportioned that the same would have to be apportioned by this Court by acreage measurement.” Since we uphold the lower Court’s finding that the boundary lines between the properties are not the government half lot lines, but the lines established by the metes and bounds descriptions in the original deeds, whether a shortage in government lots should be apportioned by proportionate lineal measurement as distinguished from proportionate acreage is not properly a question before this Court.
The judgment of the lower Court is affirmed.
Affirmed.
HOBSON, C. J., and MANN, J., concur.